## JOHNSON v. ARNWINE.

1. To justify the admission of secondary evidence of the contents of a paper, on an allegation of the loss or destruction of the original, as a general rule, the party is expected to show that he has, in good faith, exhausted, in a reasonable degree, all the sources of information and means of discovery which the nature of the case would naturally suggest, and which were accessible to him.

2. If any suspicion hangs over the instrument, or there are circumstances tending to excite a suspicion that it is designedly withheld, the most rigid inquiry should be made into the reasons for its non-production; but where there is no such suspicion, all that ought to be required is reasonable diligence, in the effort to obtain the original.

3. The degree of diligence which shall be considered necessary, in any case, will depend on the circumstances of the particular case—the character and importance of the paper, the purposes for which it is proposed to use it, and the place where a paper of that kind may naturally be supposed to be likely to be found.

4. If the document be one of public concern, and there be, by law, a place where such instruments, in due course of law, should be deposited and be found, search in that place is all that will be required, and in the absence of grounds of suspicion that the original is fraudulently withheld, will justify the admission of secondary evidence, without calling persons who have had access to the paper, and might have the original in their possession.

5. Proof of the loss of the original being a matter preliminary to the admission of evidence in the cause, the question of its sufficiency is for the court, and, on writ of error, the *onus* is on the plaintiff in error, of showing that the result reached was erroneous, and there should be no reversal unless it clearly appears that the court below was in error, and that injustice was done by the erroneous decision.

6. In an action for a malicious prosecution, in causing the arrest of the plaintiff on a criminal charge, it appearing that the justice before whom the complaint was made had transmitted the original complaint, and his warrant issued thereon, to the prosecutor of the pleas, unsuccessful search in the clerk's office, and among the papers of the prosecutor, is sufficient to justify secondary evidence of the contents of the original complaint and warrant, though it be shown that these papers were last seen when they were before the grand jury, on its investigation of the charge, and no search was made for the papers in the grand jury room.

7. The deposition of a witness who is in this state, but is ancient or infirm, or is sick, or is about to go out of the state, may be taken on notice, during the trial of the cause, under Section 25 of the act concerning evidence. *Rev., p.* 382.

On error to Hunterdon Circuit

Argued at June Term, 1880, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, VAN SYCKEL and KNAPP.

For the plaintiff in error, *John T. Bird.*

For the defendant, *R. S. Kuhl.*

The opinion of the court was delivered by

DEPUE, J.    The plaintiff sued the defendant for a malicious prosecution in causing his arrest, on a charge of larceny. To prove that the defendant instigated the proceedings before the justice, the plaintiff relied upon the fact that the defendant made the complaint before the justice, on which the warrant was issued. The complaint was in writing. On an allegation of the loss of the original complaint and of the warrant, sworn copies of the complaint and warrant were admitted in evidence. The rulings of the judge, on this

subject, gave rise to a bill of exceptions and to this writ of error.

The case was tried on the theory that sworn copies were admissible only as secondary evidence, and therefore competent only on proof of loss of the originals. I will so consider the questions at present.

As a foundation for the admission of the copies in evidence, the plaintiff proved by the justice that a complaint in writing was made before him by the defendant, and that he issued the warrant thereon, and that he gave the papers to the defendant's counsel. The counsel of the defendant testified that he got the papers—the complaint and warrant—from the justice, and gave them to the prosecutor of the pleas; that he saw the papers before the grand jury, and that was the last he saw of them. The prosecutor of the pleas testified that the complaint and warrant were presented to the grand jury, and that the last he saw of them, they were in the hands of the grand jury. He further testified that he had personally made search for the papers, in his office, and could not find them. The clerk of the court was also called as a witness, and testified that he had searched the files of his office, and could not find these papers; that he does not remember of their ever being there. The plaintiff was arrested on the 17th of December, 1877, and the complaint was heard and disposed of by the grand jury at the term of April, 1879. This suit was commenced in May following, and came on for trial at the term of February, 1880.

At the trial, objection was made to the admission of the sworn copies as secondary evidence, on the ground that there was no proof of diligent search, or of the loss or destruction of the originals. On the argument, the contention of counsel was that, in order to exhibit the diligence required in the search for the originals, the plaintiff should have caused search to be made in the grand jury room, and if the papers were not found on such search, he should have called the foreman of the grand jury and the clerk of the grand jury, if not other members of that body.

The theory on which evidence of a secondary grade is admitted is, that the production of the primary evidence is out of the party's power.   The loss or destruction of a paper is the occasion on which this rule is most frequently invoked, yet, in the practical application of the rule to lost papers, proof of loss or destruction so fully as to exclude every hypothesis of the existence of the original, is not required.   It is not necessary to prove, exhaustively, that the paper nowhere exists.. 1 *Wharton on Evidence*, § 141.   The question is always one of diligence in the effort to procure the original, before evidence of its contents is resorted to.   As a general rule, the party is expected to show that he has, in good faith, exhausted, in a reasonable degree, all the sources of information and means of discovery which the nature of the case would naturally suggest, and which were accessible to him.   1 *Taylor on Evidence*, § 399 ; 1 *Greenleaf on Evidence* 558 ; *Simpson* v. *Dall,*. 3 *Wall.* 460.   If any suspicion hangs over the instrument, or there are circumstances tending to excite a suspicion that it is designedly withheld, the most rigid inquiry should be made into the reasons for its non-production, but where there is no such suspicion, all that ought to be required is reasonable diligence in the efforts to obtain the original.   *Minor* v. *Tillotson,* 7 *Pet.* 99.   Reasonable search is sufficient, although it does not appear that every possible search has been made.   *Hart* v. *Hart,* 1 *Hare* 1 ; *McGahey* v. *Alston,* 2 *M. & Wels.* 206–214.

No absolute rule has been or can be laid down, defining what search shall be considered as a search prosecuted with reasonable diligence.   The degree of diligence which shall be considered necessary, in any case, will depend on the circumstances of the particular case—the character and importance of the paper—the purposes for which it is proposed to use it, and the place where a paper of that kind may naturally be supposed to be likely to be found.

The value of a paper is a circumstance entering into the degree of diligence required.   If the document be an important one, such as that the owner would have an interest in

preserving it, diligent search will be required, but if the paper be of little or no value, a presumption of its loss or destruction will arise from that circumstance, and a slight degree of diligence may satisfy the court of the party's inability to produce it. 1 *Taylor on Evidence*, § 399. A greater degree of diligence would be expected in the search for an important paper, such as a deed or a subsisting agreement, than would be required in the effort to procure a paper of comparatively little importance, which there would be no special interest in preserving, such as a letter, an envelope, or a satisfied agreement, or an expired lease, or indenture of apprenticeship.

The character of the paper will also influence, greatly, the determination of the place where, or the person with whom the search should be made. As was said by Lord Ellenborough, in *King* v. *Inhabitants of Morton*, 4 *M. & Sel.* 48, "The making search and using due diligence are terms applicable to some known or probable place or person, in respect of which diligence may be used." "If," says Chancellor Green, "the person to whom the paper belongs, or who, by law, has the custody of it, or to whom it has been entrusted by another, testifies that he has made diligent search for it, where it was likely to be found, it is sufficient evidence of its loss." *Clark* v. *Hornbeck*, 2 *C. E. Green* 430. "The first inquiry" says Blackburn, J., "is, where would the document naturally be, if it be still in existence? for there the search should be made, and if not found then, secondary evidence will be admissible." *Reg.* v. *Overseers of Hinckley*, 3 *B. & S.* 885.

If the document be a private paper, in which the party offering secondary evidence of its contents has a personal interest, and it be an important paper, such as, in the usual course of business, would be likely to be in his possession, or in the possession of another, for his benefit—as, for instance, articles of agreement to which he is a party—pursuit of it in every direction in which the original can be traced, may reasonably be required, before secondary evidence of its contents will be received. *Smith* v. *Axtell*, *Saxt.* 494. If the docu-

ment be one in which other persons are also interested, which has been placed in the hands of a custodian, for safe keeping, the latter must be required to make search, and the fruitlessness of such search be shown, before secondary evidence can be let in. 1 *Wharton on Evidence,* § 144; *Hart* v. *Hart,* 1 *Hare* 8. If the paper be one of importance chiefly to third persons, search among the papers of such of the parties as would have an interest in the preservation of the paper, or would, under the circumstances, be likely to have it in possession, will be sufficient. *Reg.* v. *Overseers of Hinckley,* 3 *B. & S.* 885; *Minor* v. *Tillotson,* 7 *Pet.* 99; *Kingwood* v. *Bethlehem,* 1 *Green* 221.

If the paper be one of a kind that, in the usual course of business, would have a proper place of deposit, search in that place is all that will be required, and, in the absence of grounds of suspicion that the original has been fraudulently withheld, will justify the admission of secondary evidence, without calling persons who have had access to the paper, and possibly might have the original in their possession. 1 *Taylor on Evidence,* § 401. In a settlement case, evidence was given that search was made in the parish chest for the indentures of apprenticeship of a pauper, and that it could not be found there. The court held that, inasmuch as it was the duty of the overseers to deposit the indenture in the parish chest, inability to find it there raised a presumption of its loss or destruction, sufficient to justify secondary evidence of its contents. *Rex* v. *Inhabitants of Stourbridge,* 8 *B. & C.* 96. In another settlement case, search in the office of the landlord for a lease of lands to the pauper, was declared to have been sufficient, without calling the landlord as a witness, if it had been proved that the landlord's office was the proper place of deposit. *Regina* v. *Saffron Hill,* 1 *El. & Bl.* 93. It being shown that it was the custom to return canceled checks to the clerk of the parish, and to deposit them in an apartment of the parish work-house, search in that place for a canceled check, was held to be sufficient search to let in secondary evidence of the contents of the check, without serving a notice

to produce on the clerk to whom the check was delivered—he being a defendant in the cause—or calling his successor, who was out of office. *McGahey* v. *Alston*, 2 *M. & Wels.* 206. To prove a warrant to levy borough rates, the high constable of the borough was called, and swore that he had deposited his warrant in his office, and, on a search, could not find it; secondary evidence of its contents was admitted, although it appeared that the town clerk had access to the sheriff's office, and he was not called as a witness. *Fernley* v. *Worthington*, 1 *M. & G.* 491. When the surrogate's office is, by law, made the place of deposit for an ancient will, ineffectual search there was held sufficient to authorize the admission of a certified copy as secondary evidence of its contents. *Jackson* v. *Russell*, 4 *Wend.* 543. Unsuccessful search for an appeal bond, by the justice to whom it was delivered, among the papers in his office and in the county clerk's office, in the place where such bonds are usually kept, without success, was adjudged sufficient evidence of loss to admit parol evidence of its contents. *Teall* v. *Van Wyck*, 10 *Barb.* 376. Proof that a ship's papers were seized with her, and delivered into court when she was condemned, and that a certain paper belonging to her could not be found there on search, is sufficient evidence of loss to warrant the introduction of parol evidence of its contents. *Francis* v. *Ocean Insurance Co.*, 6 *Cow.* 404.

Much more will the place for deposit be the place for the search, when the document is one of public concern, and there is, by law, a place where such instruments, in due course of law, should be deposited and be found. In case the custody of a paper is committed by law to a particular officer, as such, search in his office and among his official papers, will generally be sufficient. *Proprietors* v. *Battles*, 6 *Vt.* 395. It being the custom of the sheriff's officer to deliver his warrants to the auctioneer, to be transmitted to the excise office, through the supervisor of excise, search in the sheriff's office and among the auctioneer's papers, with a search at the excise office, was held sufficient, without calling the supervisor or

searching his papers, the failure to call the supervisor or to examine his papers, being excused on the presumption that the supervisor did his duty, and sent up all the papers delivered to him. *Minshall* v. *Lloyd*, 2 *M. & Wels.* 450. In an action for maliciously causing the plaintiff's arrest on a criminal charge, it appeared that the depositions taken before the magistrate were delivered by him at the Court of Quarter Sessions, either to the clerk of the peace or to his deputy, and search being made by the clerk among his papers, without the depositions being found, it was held to be sufficient, and that it was not necessary to call the deputy clerk to prove that the papers were not in his possession, inasmuch as it was his duty, if he received them, to deliver them to his principal, and that, therefore, the plaintiff had a right to expect that the depositions were in the principal's hands. In delivering his judgment, Best, J., said that the plaintiff had provided himself with the testimony of the person who ought to have had the depositions, if they were not returned to the Sessions, and of the person who ought to have had them if they had been returned ; that if the deputy received them, he received them for his master, and he, in due course, would have placed them among his papers, and, not being found among them, the fair presumption was that they were lost or destroyed. *Freeman* v. *Arkell*, 2 *B. & C.* 494.

The cases cited are precedents illustrative of the principle by which courts are guided in admitting secondary evidence of the contents of a written instrument. The court will require a reasonable assurance that evidence of a higher nature is not withheld or suppressed by the party offering secondary evidence, (*Clark* v. *Hornbeck*, 2 *C. E. Green* 430,) and will administer the rule that a party shall produce the best evidence he has in his power to produce, so as to guard against frauds, surprise, and imposition. *Cornett* v. *Williams*, 20 *Wall.* 226.

The proof of loss being a matter preliminary to the admission of evidence in the cause, the question of its sufficiency is for the court. If the decision of the judge, upon the testi-

mony offered on that subject is liable to review on writ of error, (see *Harrison* v. *Allen*, 11 *Vroom* 556; *Reg.* v. *Overseers of Hinckley*, 3 *B. & S.* 885; *Minor* v. *Tillotson*, 7 *Pet.* 99; *Simpson* v. *Dall*, 3 *Wall.* 460,) the *onus* is on the plaintiff in error, of showing that the result reached was erroneous, (*Queen* v. *Saffron Hill*, 1 *Ell. & Bl.* 93,) and there should be no reversal unless it clearly appears that the court below was in error, and that injustice was done by the erroneous decision.

In the present case, the missing papers were papers in a criminal prosecution. The plaintiff had no control over them—no power to take them into his custody, nor to determine the custody in which they should be kept, and consequently had no responsibility cast upon him for their safe keeping. It was the duty of the magistrate to transmit these papers to the clerk of the Court of Oyer and Terminer, or deliver them to the prosecutor of the pleas of the county. The papers were delivered to the public prosecutor, and were laid before the grand jury. The plaintiff's attorney saw them before the grand jury, but he had no control over them while they were there. The proper place for their deposit was among the files of the court, there to be kept as public records; and when the criminal prosecution was ended, it was the duty of the prosecutor to have them placed among the records of the court.

In preparing his case for trial, the plaintiff's attorney had a right to expect that these public records were in their proper depository. He was under no obligation to anticipate that they had, by the oversight or neglect of others, become mislaid or lost. Being unable to obtain them from the files of the court, he caused search to be made in the clerk's office and among the papers of the prosecutor, the only places where papers of this character, if not lost or mislaid, would be likely to be found; and he was not chargeable with a duty to search for them elsewhere. The plaintiff could have no interest in withholding or suppressing the original papers, and his search for them was all that could reasonably be required.

Error was also assigned to the admission of the deposition of Mr. Rafferty. The witness was sick and under the charge of a physician, who testified that it would not be prudent for him to leave his room and come into court. The deposition was taken on notice, and in the presence of the defendant's counsel. It was taken, during the trial of the cause, before a judge of the Court of Common Pleas. The objection to the reading of the deposition was on the ground of the shortness of the notice given, and of its being taken after the trial had been commenced.

The deposition was regularly taken, pursuant to the twenty-fifth section of the act concerning evidence. *Rev.*, *p.* 382. That section provides for the taking of the deposition of a witness who is in this state, but is ancient or very infirm, or is sick, or is about to go out of the state, before certain officers—among whom a judge of the Court of Common Pleas is mentioned—on notice to the adverse party, immediately, or at such short day as the case, in the opinion of such officer, may require. *Ogden* v. *Robertson*, 3 *Green* 124, which held that a commission for the examination of witnesses must be executed and returned before the trial of the cause, was decided under the act of February 18th, 1799, (*Rev. L.*, *p.* 437,) which provided for the taking of the depositions of witnesses, domestic and foreign, by commission, on interrogatories and cross-interrogatories. The twenty-fifth section of the present act was originally introduced in the Revision of 1846. The section as it stood in the revision of 1846, provided for the examination of a witness who is in this state, and is about to go out of the state, or is ancient, infirm, or sick, before certain officers, in lieu of his examination by commission. *R. S.*, *p.* 961, § 6. In the Revision of 1874, the act was further amended, and, at present, the deposition of a domestic witness can only be taken under the twenty-fifth section of the act, and the taking of depositions by commission, on interrogatories and cross-interrogatories, is only permissible when the witness resides out of the state. *Rev.*, *p.* 382, § 25; *p.* 383, § 29. In the present act, there is no requirement, expressly

or by implication, that a deposition taken under the twenty-fifth section of the act shall be taken before trial. *Read* v. *Barker*, 1 *Vroom* 378. The section expressly authorizes the time and length of notice to be fixed by the officer, in his discretion. The deposition was regularly taken, and there is no ground to believe that the officer before whom it was taken exercised his discretion unfairly or oppressively, in designating the notice to be given.

There is no error apparent on the record, and the judgment should be affirmed.