### HARRY H. KOEHLER v. MINA SCHILLING.

Submitted December 8, 1903—Decided February 23, 1904.

1. Secondary evidence of the contents of a written contract alleged to be lost will be admitted only when the trial court is satisfied by proof that the missing paper has been searched for with reasonable diligence; and if the document has been traced to the custody of a particular person, a like effort to find such person must also be shown.
2. The loss of the missing writing and the reasonable diligence of the search that was made for it, being preliminary questions of fact to be found by the trial court, such findings will not be disturbed upon error if there was any testimony to support them.
3. Where the only testimony upon such preliminary inquiry was that a witness, who had given the missing writing to his attorney to bring suit upon it, had made, within sixty days, an effort to find his lawyer, which was unsuccessful, the trial court did not have before it any testimony capable of supporting a finding that what had been done to discover the missing paper was all that reasonable diligence required.

On appeal from the District Court.

Before Justices GARRISON and GARRETSON.

For the plaintiff, *Sommer & Adams.*

For the defendant, *Llewellyn F. Hobbs.*

The opinion of the court was delivered by

GARRISON, J. This is an action upon two written contracts, the contents of which the plaintiff was permitted, over objection, to prove by the oral testimony of a witness produced by him. This testimony was that the contracts had originally been made with the defendant by Wilcox, Haight & Ellery Company, a corporation of which the witness was president, and had by it been assigned, on the 26th day of March, 1901, to the Printwell Publishing Company, by whose trustee in bankruptcy they had been assigned, on August 8th, 1902, to Everymonth Publishing Company, who, on

August 9th, 1902, assigned them to the United States Publishing Company, who, on August 21st, 1902, assigned them to the present plaintiff, who later in 1902 brought the present suit. By these several assignments the contracts passed, if at all, under the general designation of "book accounts," without any specific mention or further identification. To account for the non-production of these instruments at the trial neither the plaintiff nor any of the intermediate assignors was called to testify, the sole witness upon this point being the one above referred to, namely, John C. Wilcox, the president of the concern that had parted with the contracts by assignment on March 26th, 1901. .

The following is the testimony of this witness, upon which the trial court admitted secondary proof of the contents of the instruments sued upon: "I was formerly president of the corporation of Wilcox, Haight & Ellery Company, and manager of the New York office; that company had transactions with Mina Schilling; they had two contracts for advertising; I haven't them with me; they are lost; I endeavored to find them; all the contracts were taken out of the safe when summons was issued against Mrs. Schilling; they were put in the hands of Mr. Wolf; we have tried to get them from Wolf; the time I saw Wolf was last spring; we have made an effort to find him in the last sixty days."

Premising that the loss of the missing writings and the reasonable diligence of the search that was made for them by this plaintiff were preliminary questions for the trial court, whose decision upon the weight of the testimony will not be disturbed in a proceeding where the only matters open for review are questions of law, the *onus* is upon the appellant to show that the obnoxious ruling is unsupported by any testimony. The precise nature of the preliminary inquiry in such cases was made the subject of a comprehensive analysis by Mr. Justice Depue, in the opinion delivered by him in the case of *Johnson* v. *Arnwine*, 13 *Vroom* 451. The pertinent points of this opinion, briefly stated, are that the party who seeks the admission of secondary evidence of the contents

of a private writing in which he is personally interested must make diligent search for it where such document naturally or presumably would be, and that if it has been traced into the hands of another the search made for such custodian must likewise be shown or the absence of such testimony be satisfactorily accounted for. In the present case the reasonable presumption that the contracts were in the possession of their owner, to wit, the plaintiff, or of some one of the intervening owners, is deemed to have been overcome by the testimony of Wilcox that he had delivered them to one Wolf, as his attorney-at-law, to bring suits on them. It is claimed that this testimony rebutted the presumption that springs from ownership, but *non constat* that the contracts had not been delivered by Wolf to their rightful owner, namely, either the plaintiff or one of the mesne assignees, and there is no testimony that this was not the case. If, however, it be granted that the testimony of Wilcox that he delivered the contracts to Wolf fully rebuts these presumptions, the question arises whether there was any testimony that Wolf could not have been found by the plaintiff, or by Wilcox acting for the plaintiff, by a search conducted upon rational lines, pursued by reasonable diligence. Apparently the difficulties to be overcome were only such as normally prevent the establishment of communication between a client and his attorney. Presumably Wolf, if living, had an office, or an address, or was known to the clerk of the courts in which he practiced, or at least had a place in the city directory; if dead, there were even more direct means of ascertaining that fact from official sources. So that the circumstance that Wilcox had given up Wolf as lost after an effort to find him conducted upon undisclosed lines could not aid the trial court in determining that a rational search for Wolf had been instituted, still less that it had been pursued with reasonable diligence.

It is true that in the opinion above cited Mr. Justice Depue points out that the circumstances of each case and the characteristics and importance of the object of search enter into the measure of diligence that will be required, saying that

"for small objects of trifling importance that would naturally be mislaid or readily overlooked, such as an envelope or an unexpired lease, the higher degrees of diligence are not exacted." There is, however, no testimony in the present case by which this mitigation of the rule can avail the plaintiff, the object of whose search was not of the sort described, but was a lawyer, into whose custody the plaintiff's contracts had been traced by the only witness put forward to testify upon this point.

When the offer to permit oral proof of the written contracts was made the trial court entered upon the preliminary investigation with the presumption that the contracts on which the plaintiff had brought suit were in his own possession. This presumption was rebuttable, but not rebutted, unless it be deemed that Wilcox's testimony disavowed the plaintiff's possession as well as his own. If neither Wilcox nor the plaintiff had the contracts, there was then a minor presumption that, not having passed to the plaintiff by the general language of the assignments, they were held as outstanding claims against the defendant by one of the intermediate assignees, which was one of the seriously debated questions at the trial. If all of these presumptions be considered to be rebutted by the fact that Wilcox had entrusted the contracts to Wolf as his attorney, then it was incumbent upon the plaintiff to show what had been done to find Wolf, to which end the only witness, as we have seen, was Wilcox, whose testimony did not aid the court in ascertaining what had been done, and hence could not enable it to reach a valid conclusion that what had been done was all that reasonable diligence required of the plaintiff. This conclusion fully sustains the proposition of which the appellant had the burden, namely, that at the time the oral proof was admitted over his objection the existence of a state of facts that would justify the admission of secondary evidence was unsupported by any testimony.

For this reason the record of the District Court will be remitted, with the judgment reversed.