HELEN McHUGH AND ROBERT McHUGH, PLAINTIFFS-
APPELLEES, *v.* HAWTHORNE BUILDING AND LOAN
ASSOCIATION, DEFENDANT-APPELLANT.

Argued January 19, 1937—Decided April 17, 1937.

Before BROGAN, CHIEF JUSTICE, and Justices CASE and
PERSKIE.

For the appellant, *Reginald V. Spell* (*A. William Wann,* of counsel).

For the appellees, *Jacob M. Goldberg.*

The opinion of the court was delivered by

PERSKIE, J. This is a sidewalk case. The basic question involved relates to the liability of an owner of property for a nuisance created by the wrongful or negligent act of its predecessor in title, in making repairs to the sidewalk abutting said property, upon the owner having taken a deed for the property with such existent nuisance in the sidewalk.

On or about October 5th, 1935, Helen McHugh, while walking on the sidewalk, abutting defendant's property, which was alleged to have been in a broken, defective, uneven and irregular condition, caught and wedged her right foot, *i. e.,* the toe of the shoe on her right foot, in a crack or crevice in the sidewalk as a result of which she tripped and fell and sustained injuries.

The proofs for the plaintiffs, none was offered for the defendant, was that Philip Gegenheimer was defendant's predecessor in title. The premises consist of four lots in the city of Newark; one has a house thereon, the other three are unimproved. About midway of the unimproved lots there was a tree between the sidewalk and the curb. In the spring of 1934 Gegenheimer observed that the frost or a root of the tree, or both, had raised a slab about an inch above the adjoining slab in the sidewalk. Although he was a carpenter, with no masonry experience, he did, together with the help of another man whose qualifications are not made to appear, set out to repair the sidewalk. They pried up the slab, removed the loose dirt underneath, made no effort to remove the root of the tree but scraped it, and then pounded the slab down with the handle of a pick axe and in so doing broke off the corner of the slab. Gegenheimer testified that the resultant repair did not make the sidewalk level. "It was straight across because sidewalks have to be flush with the curb. It was not level." But he also testified that there was no eleva-

tion between the adjoining slab after the repair was made. In July following, the root of the tree again raised the elevation, making a difference of about one-half inch, and on July 26th, 1935, when defendant recorded the deed for the property, the elevation, at the point in issue had risen to a difference of about three inches. One witness testified this elevation to be three or four inches, another three and one-half inches, and the expert, a civil engineer, employed by the plaintiffs, found it to be four and one-half inches. This expert testified that it was caused by the root of the tree; that the root ran underneath the slab diagonally, more or less, with the break which is shown by the triangular piece (on *Exhibit 2*); that the proper and only method of replacing the elevated slab having a root underneath it in line with the break was to remove the root.

Defendant, as already indicated, offered no proof. Motions made in its behalf for nonsuit and to direct a verdict were denied. The case was submitted to the jury. They were also asked to answer the following questions: "1. Was the sidewalk repaired by Mr. Gegenheimer? 2. Did he in so doing leave the flagstone or a part of it elevated above the adjoining flagstone? 3. If you answer No. 2 in the affirmative, was the situation rendered more dangerous by whatever Mr. Gegenheimer did?" The jury answered the three questions in the affirmative and returned a verdict of $150 in favor of the wife and $200 in favor of the husband. It is the judgment based on that verdict that is now challenged.

Defendant argues that the court erred in denying its motions for nonsuit and for a direction of a verdict in its favor. That argument is made to rest on these grounds. "A. There was a complete failure of proof on the part of the plaintiff that a nuisance in fact existed on the sidewalk abutting the defendant's property. B. That, assuming a nuisance existed, it was there not as a result, but despite, the efforts of the defendant's predecessor in title. C. That, if a nuisance existed it was not the proximate cause of the accident." We think that these objections are without merit.

*First:* It is quite clear that the case was tried and sub-

mitted to the jury on the theory that, while defendant's predecessor in title was, concededly, under no obligation, under the proofs here exhibited, to repair the sidewalk, yet, he undertook to repair it and thus it became his duty to do so in a reasonably careful manner (*Nilsson* v. *Abruzzo,* 107 *N. J. L.* 327, 330; 153 *Atl. Rep.* 486; *Walsh* v. *Hackensack Water Co.,* 13 *N. J. Mis. R.* 815, 817; 181 *Atl. Rep.* 422), and, if in his undertaking to make the repairs he did so negligently, creating a nuisance, the nuisance so created was adopted by the defendant upon its having taken a deed with such existent nuisance in the sidewalk. *Schwartz* v. *Howard Savings Institution,* 117 *N. J. L.* 180, 181, 182; 187 *Atl. Rep.* 171.

A. What is a nuisance? By force of the common law, every part of the street is so dedicated to the public that any act or obstruction which, when left unprotected, unnecessarily incommodes or impedes its lawful use by the public is a nuisance. *Durant* v. *Palmer,* 29 *N. J. L.* 544. For an exhaustive and illuminating discussion of this subject see opinion of the Court of Errors and Appeals (1935), by Mr. Justice Heher, in the case of *Garvey* v. *Public Service, &c., Transport,* 115 *Id.* 280, 283, 284; 179 *Atl. Rep.* 33.

We are of the opinion that, under the proofs exhibited and the legitimate inferences to be drawn therefrom it was open to the jury to find that Gegenheimer undertook a job that he knew nothing about, that he did it negligently, that as a result thereof he introduced a new element of danger, and that his negligence created a nuisance. In other words it was open to the jury to find if it so chose, and they chose so to find, against defendant on all three points advanced by it, and that the plaintiff was free from contributory negligence if such a defense was, under the circumstances, available to defendant. *Cf. Hammond* v. *County of Monmouth,* 117 *N. J. L.* 11; 186 *Atl. Rep.* 452.

B. It will not do for defendant to say that the nuisance, if any, was not the result, but despite, the efforts of its predecessor in title. That statement finds no support in the proofs. The proofs here are entirely unlike those in *Schwartz* v.

*Howard Savings Institution, supra.* In that case the established fact was that every time the sidewalk was repaired it was made level. No so here. But the learned trial judge did charge the jury, as he was requested to do, that the owner of the property is not responsible to the plaintiff because the predecessor in title did not achieve perfection or use the best possible means in sidewalk construction or repair.

C. If a nuisance existed, the unescapable conclusion is that it was created by Gegenheimer. That he made the repair is conceded. Did he in so doing introduce a new element of danger which was the proximate and producing cause of the accident? *Cf. Taggart* v. *Bouldin,* 111 *N. J. L.* 464; 168 *Atl. Rep.* 570. In addition to the fact that it was open to the jury to find that the sidewalk was not made level after the repair, there is again the undisputed fact that Gegenheimer broke the sidewalk, and permitted it to remain in its broken condition. And while a witness who saw the accident places the plaintiff at the time of the fall on the sidewalk a little beyond the point of the break in the sidewalk (Mark E on *Exhibit 2*) yet, the plaintiff places herself (Mark M on *Exhibit 2*) right at the breaking point thereof. Thus it was open to the jury to find that a new element of danger was introduced, and that the nuisance thus created was the proximate and producing cause of the accident.

We desire to here mark the fact that the holding in such typical cases as *Weller* v. *McCormick,* 47 *N. J. L.* 397; 1 *Atl. Rep.* 516; *Rose* v. *Slough,* 92 *N. J. L.* 233; 104 *Atl. Rep.* 194; *Glass* v. *American Stores Co.,* 110 *N. J. L.* 152; 164 *Atl. Rep.* 305, and *Ford* v. *Jersey Central Power, &c., Co.,* 111 *N. J. L.* 112; 166 *Atl. Rep.* 490, are clearly without application to the case at bar. They are distinguishable both on the facts and the law. We tarry just long enough to say a few words concerning the holding in the case of *Rose* v. *Slough, supra,* urged as applicable here and to the holding in *Ford* v. *Jersey Central Power, &c., Co., supra.* While in the former case our Court of Errors and Appeals, by Mr. Justice Kalisch, held that where a municipality, in pursuance of state legislative sanction, assumes control of the trees

within its territory, an abutting property owner on a street of such municipality, is relieved from the care of a tree standing on the sidewalk in front of his premises, to the extent that he will be exempt from liability to respond in damages, in a civil action, to an individual who has suffered an injury of which the tree was a producing cause, yet, the court was careful to point out (page 238) that the proofs failed to disclose that any act of the defendant "contributed to such defective condition" of the sidewalk, or that at the time of the paving, in that case, there was any indication of any roots of a tree in the ground "likely to disturb the pavement." Both factors are present in the instant case. In the Ford case our same court, by Mr. Justice Bodine, was again careful to point out (at p. 113) the lack of proof of failure "to properly fill the place where the pole had stood." In other words that there was no proof to establish the creation and maintenance of a nuisance.

The laudable and legal objectives of beautifying highways with shade trees (the planting and care of which are usually regulated by state and local sanction), and the beneficent resultant consequences to the public generally and to abutting private property owners especially, do not transcend the rights of one who innocently sustains injury as a result of a nuisance created, maintained and assumed by an abutting private property owner on such highway.

The learned trial judge hewed close to the line of our adjudicated cases, and as an added precaution submitted the aforesaid three questions to be answered by the jury.

*Second:* It is also argued that it was error to permit the expert witness to answer an hypothetical question. That argument is based on the contention that the question was not predicated upon facts in accordance with plaintiff's theory of the case. *Molnar* v. *Hildebrecht Ice Cream Co.,* 110 *N. J. L.* 246; 164 *Atl. Rep.* 300. We do not think that this is so. We have already stated the substance of his testimony. It is true that the question was submitted in piece meal fashion. We do not wish to be understood as approving such form. But the objection is not made on that score. We think that

the question submitted was in accordance with the theory of plaintiff's case. At all events, nothing is brought to our attention from which we can find that any substantial right of defendant was injuriously affected by the admission of the answer to the question.

Judgment is affirmed, with costs.