35 N.J. Super. 374 (1955)
114 A.2d 289
OLIVIA MOUNT AND LAWRENCE MOUNT, HER HUSBAND, PLAINTIFFS-APPELLANTS,
v.
JOHN JOSEPH RECKA AND CITY OF JERSEY CITY, A MUNICIPAL CORPORATION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 25, 1955.
Decided May 12, 1955.
*377 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Raymond Chasan argued the cause for appellants.
Mr. Emil W.A. Schumann argued the cause for respondent Recka.
Mr. Robert J. Rubacky argued the cause for respondent City of Jersey City (Mr. John B. Graf, attorney).
The opinion of the court was delivered by JAYNE, J.A.D.
The trial of this case was terminated by a judgment of the court directing the involuntary dismissal of the plaintiffs' alleged causes of action against both defendants. The plaintiffs respectfully protest.
In undertaking our appellate consideration of the factual and legal justification for the judgment, it is methodical to examine all of the evidence which contributes support to the allegations of the plaintiffs and also to heed all of the fortifying inferences and deductions that can logically and legitimately be derived from such evidence. McKinney v. Public Service Interstate Transp. Co., 4 N.J. 229, 243 (1950); Vadurro v. Yellow Cab Co. of Camden, 6 N.J. 102, 106 (1950); O'Donnell v. Asplundh Tree Expert Co., 13 N.J. 319, 328 (1953); Gentile v. Public Service Co-ordinated Transport, 12 N.J. Super. 45, 49 (App. Div. 1951); Silverstein v. Dohoney, 32 N.J. Super. 357, 362 (App. Div. 1954).
*378 From the evidence and its derivative inferences the following narrative of the relevant sequence of events and circumstances is composed.
Many years ago, perhaps in 1908, the City of Jersey City established a department of its municipal government known as the shade tree bureau under the supervision of one designated as the city forester. It has been the function of the bureau to plant and replace as conditions favored or as occasions required shade trees at suitable locations along the streets of the city. The service rendered by the bureau has been known by the inhabitants of the city, who commonly address to the bureau their requests for the planting of shade trees in front of their respective properties and also for the removal of dead trees and their replacement with live ones. The bureau maintains records disclosing the dates and the names of the persons making such requests, the locations of the properties, and the nature and specific time of its operations and by whom performed.
We are informed that the city has not created by ordinance a shade tree commission pursuant to N.J.S.A. 40:64-1. However, it may be inferred from the testimony of the city forester that the Bureau has upon request and indeed upon its own volition assumed for many years as a public service the planting, removal, and replanting of shade and ornamental trees along the streets of the city.
Moreover, an ordinance seems to have been adopted by the governing body of the city which originated the bureau, declared its functions, and conferred upon the city forester the authority he exercises, but unfortunately the ordinance was not admitted in evidence, and we are accordingly unaware of the precise scope of its terms relating to the city's control over such trees.
However, we notice the following admission embodied in the pretrial order:
"Deft. Jersey City, a municipal corporation of N.J. admits it is a municipal corporation and that the Jersey City Shade Tree Bureau was duly organized as an agency of or department of Jersey City, non-profit, with certain defined duties created by ordinance * * *."
*379 The Legislature has for a period of many years vested in the municipalities the power and authority to control for the public benefit the planting and preservation of shade trees along their streets and avenues.
In the pursuit of its service the bureau some time in the year 1947 planted two trees in front of the premises identified as No. 318 Randolph Avenue, which property is at present owned by the defendant John Joseph Recka. In 1951 Recka's predecessor in title constructed a concrete sidewalk extending from the front property line to the curb, leaving, however, in it two circular openings around each of the two trees, obviously for the purpose of affording air and moisture to the roots of the trees. Such a sidewalk construction is conventional, and it is not intimated that it was hazardous or structurally improper.
The records of the bureau disclose that on May 13, 1952 a request, No. 1819, was received from Recka by telephone for an inspection of the two trees. The trees had evidently died, and among the bureau records is found request No. 2048 from Recka dated June 17, 1952 on which under the title "Nature of Work" on the printed form appear in handwriting the words "Remove 2 young dead trees." The foreman's report thereon designed to state the name of the foreman, the nature of the services performed and when rendered, reveals that the two trees were removed by the bureau on February 20, 1953. The notation reads: "Removed 2 young N. maple trees. Please replace them."
The trees were extracted by the so-called root method, which necessarily loosens the soil in which they are embedded. The acknowledged fact is that the trees were removed by the city bureau at a time during which the bureau did not have available any trees suitable for the intended replacement.
Time passed. The trees removed were not replaced. The surface of the soil in one of the openings with which we are here concerned where the tree had previously been located was on August 7, 1953 a distance of from six to eight inches beneath the surface of the surrounding sidewalk and the *380 depression was concealed by the growth therein of vegetation to a height above the sidewalk level. The photographic exhibits are illustrative.
At about four o'clock in the afternoon of August 7, 1953 the plaintiff Olivia Mount, a married woman 51 years of age, while walking on the sidewalk in front of the Recka property, stepped into the concavity so described, was thereby overthrown and sustained consequential bodily injuries.
In further observance of the files of the bureau, a memorandum entitled "Shade Tree Bureau Emergency Report" appears which designates the Recka property and contains the following instruction and a report of its fulfillment: "Remove weed growth from 2 tree replacement areas & fill flush with level of sidewalk, pack in to avoid settlement. Date, 11/5/53. No charge for this work." "Remarks  Filled in 2 replacement areas with soil to level of sidewalk. 11/10/53." Twenty days later the bureau substituted trees for those it had removed.
The aforementioned events and associated circumstances seem to compose the acknowledged factual structure underlying the respective motions for the involuntary dismissals.
The plaintiffs feel that they have been mistakenly frustrated in their endeavor to recover compensatory damages for their injuries and losses because of the trial court's determination that neither defendant is in the circumstances legally responsible to them for the injurious consequences.
The genesis of our law pertaining to streets and sidewalks is in its fundamental respects derived from the principles of the early English common law. The present significance of that historical observation is that the basic concept of the law has traditionally placed the primary responsibility for the construction and maintenance of streets and sidewalks on the government and has recognized a distinction between the related duties of the municipal government and those of an abutting owner. Vide, Weller v. McCormick, 47 N.J.L. 397 (Sup. Ct. 1885); Rupp v. Burgess, 70 N.J.L. 7 (Sup. Ct. 1903). But see dissenting *381 opinion of Mr. Justice Jacobs in Moskowitz v. Herman, 16 N.J. 223, at p. 226 (1954).
A sidewalk has been generally regarded and defined as that portion or margin of the street between the curb line and the adjacent property line. See, for example, N.J.S.A. 39:1-1; 25 Am. Jur. 343.
At the common law and in the absence of a compulsory statute or ordinance, the abutting owner is not obligated to build a sidewalk in front of his property. If, however, he chooses to do so, he must exercise ordinary care to construct the walkway in such a manner as to render it reasonably safe for the uses of public passage, and if he disregards that duty, thereby originating and continuing a condition endangering the safety of pedestrians passing over it, he may in the circumstances be responsible in the law for the creation, and he and his successors in title for the maintenance, of a nuisance in the public street. Cf. Braelow v. Klein, 100 N.J.L. 156 (E. & A. 1924); Fasano v. Prudential Insurance Co., 117 N.J.L. 539 (Sup. Ct. 1937).
And so also for the lack of due care in undertaking to repair a defective condition in the sidewalk for which he is not otherwise responsible. McHugh v. Hawthorne Building & Loan Ass'n, 118 N.J.L. 78 (Sup. Ct. 1937); Istvan v. Engelhardt, 131 N.J.L. 9 (Sup. Ct. 1943); Snidman v. Dorfman, 7 N.J. Super. 207 (App. Div. 1950). But in the present case there is no proof whatever that the cement sidewalk in front of the defendant Recka's property had been negligently constructed or was itself disintegrated or otherwise in disrepair.
In the determination of the liability of an abutting owner a distinction is made in the law between a faulty construction and its continuance, of which we have spoken, and the creation and existence of dangerous conditions which are caused by the natural action of the elements or the resultant wear of the public use. Glass v. American Stores Co., Inc., 110 N.J.L. 152 (E. & A. 1933). For the existence of defective and dangerous conditions occasioned *382 by the natural action of the elements or the resultant wear of the public use, although corresponding in proportions to a nuisance, the present law does not hold the abutting owner responsible in the absence of some wrongful act of his own. Rupp v. Burgess, supra; Ford v. Jersey Central Power, etc., Co., 111 N.J.L. 112 (E. & A. 1933); Murphy v. Fair Oaks Sanatorium, 127 N.J.L. 255 (E. & A. 1941); Moskowitz v. Herman, supra. Conformably the abutting owner is under no legal duty to repair defects so caused. Zemetra v. Fenchel Realty Co., Inc., 134 N.J.L. 358 (Sup. Ct. 1946), affirmed 135 N.J.L. 205 (E. & A. 1947); Fischer v. Salomone, 136 N.J.L. 431 (Sup. Ct. 1948); Coll v. Bernstein, 14 N.J. Super. 71 (App. Div. 1951).
Here the sequence of occurrences which in reasonable probability produced the hazard and insecurity in the use of the sidewalk was the death of the trees, their removal, the omission promptly to replace them, the gradual subsidence of the soil in the opening in the pavement which was ultimately rendered invisible by the growth therein of vegetation.
The evidence reveals that the defendant Recka neither planted the tree nor constructed the concrete sidewalk around it. Nothing is discernible in the proof indicating that he had any direction and control over the means and manner by and in which the tree was uprooted and the consequential cavity refilled. He neither created the hazardous condition by any wrongful act of his nor undertook negligently to eliminate it. Cf. Starr v. Adelphia Holding Corp., 124 N.J.L. 521 (E. & A. 1940).
The inescapable inference generated by the evidence was that the city had actively assumed the care, preservation, and control over the tree and its removal. Vide, Rose v. Slough, 92 N.J.L. 233 (E. & A. 1918). In such a state of affairs, the mere circumstance that the defendant Recka as a property owner requested the city bureau to inspect the dead trees and, if necessary or desirable, to remove them and replace them with live ones was not such a participation in the independent action of the city bureau *383 as legally to impute to him a measure of liability for the alleged lack of foresight and circumspection of the department of the municipality.
We conclude that the involuntary dismissal of the alleged causes of action of the plaintiffs against the defendant Recka was proper in the existing state of our decisional law, and the judgment in that respect is affirmed.
But the facts established by the evidence which together with the permissible inferences are for present purposes to be recognized in their aspect most favorable to the plaintiffs constrain us to adopt a contrary view of the dismissal of the action against the city. We surmise that the learned trial judge in the distinguishable state of the evidence in the present case mistakenly ascribed precedential influence to the decision in Ford v. Jersey Central Power, etc., Co., supra. The factual situation before us more closely resembles that in Garvey v. Public Service, etc., Transport, 115 N.J.L. 280 (E. & A. 1935).
Certainly proof of the causation of the dangerous condition by some actionable breach or omission of duty on the part of the defendant is an essential element of the plaintiffs' cause of action. Here, we think, that element of proof could be reasonably inferred and deduced by the jury from the evidence.
In the present case it was acknowledged that the shade tree bureau "was duly organized" as a department of the city government, and the evidence was productive of the sound inference that the function of the bureau was to attend to the planting and replanting of shade trees along the public streets. See comment in McHugh v. Hawthorne Building & Loan Ass'n, supra, 118 N.J.L., at p. 82. In that pursuit the bureau uprooted the dead tree before it had a live tree for replacement, filled its former bed with soil in such a manner that it progressively and noticeably settled and subsided during "a period of months," and the bureau subsequently corrected the dangerous condition.
*384 It is conceivable that the immediate purpose of the bureau was to redeposit temporarily the dirt in the hole with the expectation of promptly planting therein another tree. Even so, the subsidence of such a filling through the processes of nature was an eventuality not only to be reasonably apprehended, but the eventuality which the jury could in reasonable probability find had in fact occurred.
The jury might have resolved that the affirmative undertaking of the bureau was to remove a dead tree and substitute a live one for it, and in the pursuit of that undertaking subjected the travelers on the sidewalk to a consequent risk constituting a nuisance in degree.
The common-law principle that a municipality is liable for the creation of a nuisance in a public way by its own positive misfeasance is firmly established in our jurisprudence. Lovett v. Borough of Keyport, 133 N.J.L. 122 (E. & A. 1945); Milstrey v. City of Hackensack, 6 N.J. 400 (1951).
Anent the liability of municipal corporations for negligence in the performance of public governmental duties, consult the collation of citations contained in Buffington v. Atlantic County, 11 N.J. Misc. 443, 444 (Sup. Ct. 1933), to which may be added the more recent decisions in Allas v. Borough of Rumson, 115 N.J.L. 593 (E. & A. 1935); Hammond v. County of Monmouth, 117 N.J.L. 11 (Sup. Ct. 1936); Truhlar v. Borough of East Paterson, 4 N.J. 490 (1950); Kress v. City of Newark, 8 N.J. 562 (1952); see, also, collection of authorities by Judge Clapp in Kelley v. Curtiss, 29 N.J. Super. 291 (App. Div. 1954), conclusion reversed for reasons stated in 16 N.J. 265 (1954).
We reach the conclusion that in the state of the pertinent evidence, the involuntary dismissal of the action against the City of Jersey City was erroneous, and the judgment in that respect is reversed.