45 N.J. Super. 471 (1957)
133 A.2d 362
FREDDI-GAIL, INC., A CORPORATION, PLAINTIFF-RESPONDENT,
v.
ROYAL HOLDING CORP., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 4, 1957.
Decided June 21, 1957.
*472 Before Judges CLAPP, FRANCIS and STANTON.
Mr. Samuel A. Gennet argued the cause for plaintiff-respondent.
*473 Mr. E. Gustave Greenwald argued the cause for defendant-appellant.
The opinion of the court was delivered by CLAPP, S.J.A.D.
This action was brought by a tenant's assignee against the landlord to recover damages to the assignee's goods, caused by leakage from an interior pipe carrying rain water off the roof of the premises. Further, see 34 N.J. Super. 142 (App. Div. 1955). The principal point on the appeal was raised by defendant on its motion for dismissal, made at the close of plaintiff's evidence, namely, was there proof of negligence warranting the submission of the case to the jury? The motion was denied, and the jury later brought in a verdict of $5,283.71. Defendant appeals, presenting certain other questions in addition to the point stated.
There was evidence from which a jury could properly have found the facts herein stated. Defendant, the owner of a six-story loft building in Union City, had rented to the plaintiff the loft on the second floor. When rain water drained off the roof, it passed first through a 4" copper pipe 10' long, which was attached to the roof. Nearly the full length of this copper pipe was inserted, as an arm in a sleeve, into an iron pipe six inches in diameter, made up of sections six feet long, which were screwed together and which extended through the six-story building into a sewer in the street. A few days before the leakage, the top section of the iron pipe, or the section next to the top one, was replaced by a pipefitter at the request of the landlord. Defendant has not raised any question here (or below) as to its responsibility for the pipefitter's work, and we therefore do not consider the point. Cf. Restatement, Torts, § 420.
The leak, which caused the damage, occurred following a heavy rain. After the damage had been done a plumber, inserting a "snake" in the iron pipe, drew up paper, twigs and "all kinds of debris" which seem to have lodged in the pipe at about the foundation wall of the building, some *474 18 1/2 feet from the sewer. It could be inferred that the pipe was clogged at that point by the debris and that the rain water from the roof, collecting in the pipe, had filled the full length of the pipe from the point stated, to the open sleeve at its top  that is, to the place where the copper pipe entered it. The leak came at that place. A simple calculation demonstrates that it would not have taken a great many gallons of water to fill this six-inch pipe.
The whole case is predicated on the fact that the connection between the copper pipe and the iron pipe was not tightly caulked, soldered or threaded, and that when the landlord replaced the section of iron pipe referred to, it should, according to recognized standards, have seen to it that this joint was made water tight. An expert witness for the plaintiff testified that it looked as though some one had placed some tar around the joint, but had done so in such a manner that one could put his finger into the joint; "it was open." The plumbing code of Union City (we deal later with the question whether it is admissible in evidence) provides
"Inside leaders must be made of cast iron * * * with roof connections made gas and water tight by means of heavy lead or copper drawn tubing * * * caulked or screwed into the pipe."
No claim is made that the defendant was under a duty to repair the pipe. But cf. Devine v. Lyman, 270 Mass. 246, 169 N.E. 908 (1930), and 52 C.J.S., Landlord and Tenant, § 423, p. 92, at note 9, as to a landlord's liability respecting drainpipes under his control. On the oral argument defendant relied upon Bauer v. 141-149 Cedar Lane Holding Co., 24 N.J. 139 (1957), and the assumption seems to have been made (and not controverted) that the landlord had voluntarily and gratuitously made the repair referred to. We will deal with the case on that basis. The first point in the case therefore turns on the application of Bauer to the circumstances here.
It is elementary that a volunteer must act with due care. The principle recurs in all fields of negligence law. *475 See, for example, La Brasca v. Hinchman, 81 N.J.L. 367 (Sup. Ct. 1911); War v. Mazzarella, 137 N.J.L. 736, 737 (E. & A. 1948); Bascho v. Pennsylvania Railroad Co., 3 N.J. Super. 86, 92 (App. Div. 1949). It might be observed, for example, that in one such field (where a nuisance is predicated upon negligence in the building of a sidewalk voluntarily) there is a line of authority relieving the volunteer of liability unless he creates a different or greater danger. Halloway v. Goldenberg, 4 N.J. Super. 488, 490 (App. Div. 1949); Snidman v. Dorfman, 7 N.J. Super. 207, 211 (App. Div. 1950); Longi v. Raymond-Commerce Corp., 34 N.J. Super. 593, 600 (App. Div. 1955); cf. McHugh v. Hawthorne B. & L. Assn., 118 N.J.L. 78, 82 (Sup. Ct. 1937). But to the contrary, see the views expressed by Cardozo, C.J., in Marks v. Nambil Realty Co., 245 N.Y. 256, 157 N.E. 129 (Ct. App. 1927) (dealing with the landlord's liability to a tenant for negligence in gratuitously repairing a stairway).
In Bauer, a case in which a landlord voluntarily made repairs in the leased premises, the Supreme Court put on a sound footing our law respecting volunteers. The court there held that the controlling test is the familiar standard of due care, and it rejected restrictions attached by the Restatement, Torts, § 362, 365. The Restatement would apparently deny the tenant any recovery unless the landlord induces the tenant to rely on the sufficiency of repairs made by him or unless as a result of the repairs, the premises have been made more dangerous. In Bauer an attempt was made to hold the landlord for "not doing enough" (Bauer, supra, 24 N.J., at page 149) after he had set out gratuitously to rectify a situation and to that end had "in good faith" (Bauer, 42 N.J. Super. 110, 120 (App. Div. 1956)) done a considerable number of things. The Supreme Court held that the landlord had not, through his assurances, induced the tenant to rely upon the improvements he had attempted to make; and not only had these attempts not worsened conditions, but the proofs did not even present a jury question on the issue as to whether the *476 landlord had failed to exercise reasonable care. A volunteer who assumes to act may satisfy the duty imposed upon him by the law, even though he does not do as much as should be done by one charged with a duty to make the condition safe.
In an attempt to liken the instant case to Bauer, defendant might argue that there is not the slightest indication that the plaintiff relied upon the sufficiency of the landlord's repairs made here. Further defendant might say that there is no indication that the repairs increased the danger of leakage; that in fact there is nothing to show whether or not the open joint above referred to was caulked prior to the repairs. Moreover, the landlord's attention was directed, not to the open joint which caused this damage, but to one section of the 6" iron pipe  the section nearest the roof or the one second from the roof  in which there was a sign of a leak; it thus limited its voluntary action to a replacement of that section.
We think this argument is not persuasive. It would seem that if prior to the replacement the joint between the copper pipe and the iron pipe had been sealed, then the landlord could not have replaced the section of iron pipe referred to without breaking the seal; and on the other hand if the joint had not previously been sealed, then the replacement could not have been made without revealing the lack of any seal. If the landlord was replacing the next to the top section, he apparently would have had to move the top section in the process of replacement. We think it was up to the jury to determine whether a reasonable man under the circumstances would have foreseen that a failure to caulk the joint created an appreciable risk of harm. Restatement, Torts, § 289. In contrast to the manifold corrective measures undertaken in good faith in the Bauer case, here it may reasonably be said was a comparatively simple deficiency, fairly evident and easily remediable.
The next questions in the case revolve about the issue whether the court had erred in admitting into evidence the plumbing code. It was established that the code had *477 been adopted through an ordinance in 1929, and that copies were printed, the original having then been compared with the printed copies produced in court. At the time of the trial, the original could not be located, although a search had been made for it. Any question concerning the sufficiency of the search is a matter to be left to the trial court's discretion. Koehler v. Schilling, 70 N.J.L. 585 (Sup. Ct. 1904); 4 Wigmore, Evidence (3d ed. 1940), 340. Further see Johnson v. Arnwine, 42 N.J.L. 451 (Sup. Ct. 1880). Here the court is not clearly chargeable with a misuse of discretion.
It is said that N.J.S. 2A:82-14 provides the exclusive method for proving a municipal ordinance, namely, through a copy certified by the municipal clerk. But this is not so. Where the absence of the original is satisfactorily accounted for, a sworn or examined copy is admissible. 4 Wigmore, Evidence (3d ed. 1940), 554; State v. Black, 31 N.J. Super. 418, 423 (App. Div. 1954). Cf. N.J.S. 2A:82-23, N.J.S.A. Further discussion of the problem is unwarranted.
Next it is said that there was no proof that the ordinance was still in force and that the question as to whether it had been adopted turned upon oral testimony as to what had transpired nearly 30 years ago. In addition to the presumption of continuance, which raises a question for the trial court's discretion, Brinson v. Hernandez, 24 N.J. 391 (1957), we have here a printed code which was in fact being enforced in Union City by a plumbing inspector at the very time the cause of action arose.
Defendant's final point is that the plaintiff was permitted to testify as to conjectural damages. Plaintiff was a manufacturer of women's and children's apparel. Some of plaintiff's goods, even though damaged, were salvageable, and were in fact sold. However, plaintiff had destroyed its records and defendant was therefore unable to examine the records as authorized by an order of the court. We are by no means satisfied that the plaintiff is to be charged with any improper motive because of the destruction of the *478 same. It would appear from interrogatories before us that the plaintiff was insured and that the insurance company had a subrogation claim. It might perhaps be (we have no means of knowing what was the fact) that the company instituted the present suit to recover on the subrogation claim and that the plaintiff, not mindful of the suit, had in good faith destroyed the records after the company had paid the loss. This, of course, is speculation, but we should not impute bad faith without satisfactory evidence. We see nothing warranting a determination on our part that the trial court was guilty of an abuse of discretion in admitting the proofs as to damages, notwithstanding the failure of the defendant to comply with the order respecting inspection of the records.
Testimony on plaintiff's behalf took into account the value of the salvageable material; it established the worth of the goods involved, before and after the leakage, namely, $15,827.56 and $10,543.85. The difference comes to $5,283.71, the amount of the jury's verdict. The proofs were competent and not conjectural.
Affirmed.