FRANCES MURRAY AND JOHN S. MURRAY, PLAINTIFFS-APPELLANTS, v. ANDREW MICHALAK AND JEAN K. MICHALAK, t/a THE CHANCELLOR GUEST HOME, DEFENDANTS-RESPONDENTS.

Argued March 23, 1971—Decided May 10, 1971.

*Mr. William J. Hughes* argued the cause for appellants (*Loveland, Hughes & Garrett,* attorneys; *Mr. William J. Hughes,* of counsel).

*Mr. Jay H. Greenblatt* argued the cause for respondents (*Greenblatt and Greenblatt,* attorneys; *Mr. Jay H. Greenblatt,* of counsel).

PER CURIAM. The judgment is affirmed for the reasons expressed in the Appellate Division opinion, 114 *N. J. Super.* 417 (1970).

PROCTOR, J. (dissenting). While I agree that the Appellate Division followed the tort law of this state in denying liability to the plaintiff, I must dissent because I think it is high time this Court reevaluated the law relating to sidewalk negligence cases.

On September 1, 1966, plaintiff, an elderly lady, while walking on the sidewalk in front of defendants' property, tripped and fell and suffered injuries. She tripped on a flagstone slab which was raised about three and a half inches above the level of the adjoining slab. This elevation was caused by the root of a tree which was growing in a thirty-inch strip of grass between the sidewalk and the curb. The tree was 11½ inches in diameter and 15 to 25 years old.

The defendants' predecessor in title had owned the property since 1955, and sold it to the defendants in 1961. She testi-

fied that she neither planted the tree nor constructed the sidewalk but she said that the sidewalk was fairly even during her ownership and that the flagstone slab over which plaintiff tripped was not raised to any degree at that time. Her predecessors in title are either dead or cannot be found.

Both at the time of the sale to the defendants and at the time of the accident, the property was used as a six-room guest house. It was centrally located in the business area of Ocean City and, as a result, received heavy pedestrian use both from its patrons and others, particularly during the summer months.

Ocean City has no shade tree commission and never had one. It does not plant or maintain the shade trees in the city, nor does it construct or maintain sidewalks. *Compare Hayden v. Curley*, 34 *N. J.* 420 (1961). Thus, there is no question here of the defendants being relieved of any duty because of municipal responsibility for the tree or the sidewalk. *Cf. Weller v. McCormick*, 47 *N. J. L.* 397, 399 (Sup. Ct. 1885).

There was uncontradicted expert testimony that the tree root could grow from a half inch to an inch each year and that the flagstone slab would rise at the same rate. Therefore, the jury could properly find the slab in the sidewalk had become an increasingly serious menace to the traveling public during defendants' ownership of the property. This condition should have been plainly visible to the defendants and, according to the expert testimony, could have been easily remedied by raising the slab and cutting off the root.[1]

This case points up some of the problems created by the present law. Here there was no evidence of who planted the tree or who laid the sidewalk, or whether the planting of the tree preceded the laying of the sidewalk. It seems likely that someone was negligent. If the tree was planted after the

[1] The trial court allowed the case to go to the jury which returned a verdict for the plaintiff. The verdict reflects a finding that the plaintiff was not contributorily negligent and the defendants did not raise that issue before the Appellate Division or on this appeal.

sidewalk was constructed, its planter should have foreseen that as it grew, the tree would heave the sidewalk if it were not properly maintained. If, on the other hand, the sidewalk was laid after the tree was planted, whoever constructed it should have realized that repairs might be necessary as the tree grew. See *Hayden v. Curley, supra,* 34 *N. J.* at 427. In most cases it is difficult or impossible for an injured party to come up with the required proof that a predecessor in title planted the tree or constructed the sidewalk.[2] And even if he could prove who constructed the sidewalk, he must still meet the heavy burden of proving that the construction violated the proper standard for the time the sidewalk was built. *Moskowitz v. Herman,* 16 *N. J.* 223, 224–225 (1954). Where the sidewalk is old, this burden may be near impossible to meet since a plaintiff must first prove the age of the sidewalk and then the proper standard of construction for that time. *Id.* But all this is aside from the point. In my view, one who maintains a sidewalk in a dangerous condition should be liable for injuries suffered by an innocent pedestrian as a result of that condition. It should make no difference who created the condition or whether it arose from natural causes. Rather, it is the maintenance of that condition which should give rise to an action in negligence.

I recognize that New Jersey has long followed the rule that an abutting owner is not liable for injuries from a defective or dilapidated sidewalk even though it constitutes a nuisance, unless the proofs show that that owner or his predecessors in title participated in the creation or continuance of the nuisance. *Moskowitz v. Herman, supra* at 225; *Rupp v. Burgess,* 70 *N. J. L.* 7 (Sup. Ct. 1885); *Rose v. Slough,* 92

---

[2] Of course, common sense indicates that a predecessor in title probably did both in the present case. As pointed out earlier, there was no municipal shade tree commission and the town did not construct or maintain sidewalks. Since strangers don't ordinarily undertake improvements of other persons' property, this leaves only the remote possibility that an errant seed located itself on the narrow strip of grass.

*N. J. L.* 233 (E. & A. 1918) ; *Murphy v. Fair Oaks Sanatorium,* 127 *N. J. L.* 255 (E. & A. 1941), and that an owner of premises is not responsible for defects in an abutting sidewalk caused by the action of the elements or by wear and tear incident to public use. *Moskowitz v. Herman, supra; Rupp v. Burgess, supra.* This rule has no place in today's society. It is manifestly unjust to permit a property owner to sit idly by and watch with impunity as his sidewalk deteriorates to a point where it becomes a trap for unwary pedestrians and then to immunize him from liability when the all too foreseeable injuries occur. Moreover, the law as it now stands discourages one from repairing his sidewalk, for if he undertakes repairs, and does so improperly, he will be held liable even if to some extent the repairs ameliorate the condition. Why should he take this risk when he can remain immune by ignoring the danger completely? Who in the eyes of the law should be considered the greater wrongdoer, the person who conscientiously undertakes repairs and does so improperly, or the person who, knowing of a hazardous condition, chooses utterly to ignore it?

Our cases have always recognized that an owner of property is responsible for injuries occurring where the condition of the sidewalk is attributable to a predecessor in title. Thus, in *Braelow v. Klein,* 100 *N. J. L.* 156 (E. & A. 1924), the plaintiff fell on a sidewalk in front of defendant's premises. The evidence showed that when the defendant bought the property the sidewalk was three inches higher than that on the adjoining property. The Court of Errors and Appeals affirmed a judgment for the plaintiff on the ground that the defective construction of the sidewalk had created a public nuisance which the defendant was responsible for continuing. The court said :

"There was also proof that the condition had existed for a number of years during the ownership by the defendant of the premises * * * and from which a jury could infer an adoption by him of the condition of the walk when he purchased. We have, therefore, presented the construction of a footwalk in a public highway so far

out of alignment with the true pavement level as to constitute a danger in its use and the continuance of that condition by the defendant without any effort on his part to correct the misalignment or to remove the danger. *It is difficult to escape the conclusion of law that he would be chargeable with at least maintaining a nuisance in the public highway.*" *Id.* at 158 (emphasis added)

Surely, no one would deny that the flagstone in the present case raised three and a half inches above the level of the sidewalk was a hazard to pedestrians. Indeed, it was even more hazardous than the sidewalk in *Braelow*. It is undeniable that the defects in both cases constituted a public nuisance, *viz.*, an obstruction in a public sidewalk which interferes with the rights of pedestrians. *E.g., Fredericks v. Dover*, 125 N. J. L. 288, 290 (E. & A. 1940). What possible difference should it make whether a predecessor in title was responsible for creating the conditions which led to that nuisance? It strikes me as anomalous that a property owner's duty to repair should hinge on so tenuous a criterion — a criterion which is wholly irrelevant to his own wrongdoing.

The present rule is indefensible. It may be that the majority permits the rule to stand because it fears that a change will place too great a burden on abutting property owners. If this is so, however, the rule should be one of complete immunity rather than one which permits recovery in certain isolated instances. But I do not see any danger in imposing a duty of repair. Abutting property owners are expected to keep their sidewalks in good condition anyway and most do. As a practical matter, a duty to repair already exists to some extent. If a person buys property with a defective sidewalk and the defect is attributable to a predecessor in title, he must make the necessary repairs or face liability for injuries incurred by pedestrians. There is no sound reason why his duty should not be extended to require him to make repairs for all defects at the time of purchase regardless of to whom or to what they are attributable, and to maintain the sidewalk in good repair throughout his ownership. This does not mean he would be liable for injuries caused by minor flaws and

stretches of uneveness. As in all other cases, the standard of care is one of reasonableness. If his failure to repair was unreasonable, as the jury properly found in the present case, he should be liable. This may be a difficult line to draw in some cases but if we are to have any growth in the law, we must proceed on the assumption that a "just line drawn with difficulty exceeds in value a simple line which works disproportionate injustice." Harnett & Thornton, "Insurable Interest in Property: A Socio-Economic Reevaluation of a Legal Concept," 48 *Colum. L. Rev.* 1162, 1188 (1948). See also McNiece & Thornton, "Affirmative Duties in Tort," 58 *Yale L. J.* 1272 (1949).

It must be remembered that in the present case the defendants own and operate a commercial guest home. This Court has recognized, in dictum, that the owner of a commercial establishment abutting a public sidewalk, as distinguished from the owner of a home, could arguably have a legal duty of keeping the sidewalk in good repair. Justice Jacobs, writing for an unanimous court in *Krug v. Wanner,* 28 *N. J.* 174, 179–180(1958), said:

"For the protection of its patrons, every commercial establishment must maintain its premises, including means of ingress and egress, in reasonably safe condition (citing cases). And although the paved sidewalks fronting a commercial establishment are primarily for the use of the public generally, their condition is so beneficially related to the operation of the business that the unrestricted legal duty of maintaining them in good repair might, arguably, be placed on it."

See also Justice Jacobs' comments in his dissenting opinion in *Moskowitz v. Herman, supra* 16 *N. J.* at 230.

The Court today need go no further than to hold that such a duty of repair exists for the owner of commercial premises. As I indicated above, I would go further and place such a duty on all abutting property owners, but this could be left for another day.

We are not living in a frontier society. Today, almost all urban and suburban communities have sidewalks. The law should always reflect the needs of a changing society and not

remain enmeshed in rules which are not in keeping with modern conditions. The time has come to impose a legal duty on someone to maintain those sidewalks and to hold him responsible in tort if he does not. I recognize that the majority view is to the contrary, see the cases collected in *Annotation,* "Sidewalk — Abutting Owner — Liability," 88 *A. L. R.* 2d 331, but we have not hesitated in the past to change our laws where the interest of justice so required. *Ellsworth Dobbs, Inc. v. Johnson,* 50 *N. J.* 528 (1967); *Henningsen v. Bloomfield Motors, Inc.,* 32 *N. J.* 358 (1960). This is particularly so in the area of negligence. *Immer v. Risko,* 56 *N. J.* 482 (1970); *France v. APA Transport Corp.,* 56 *N. J.* 500 (1970); *Smith v. Brennan,* 31 *N. J.* 353 (1960); *Faber v. Creswick,* 31 *N. J.* 234 (1959); *Collopy v. Newark, Eye and Ear Infirmary,* 27 *N. J.* 29 (1958). Pennsylvania has long held a property owner responsible in tort for failure to make reasonable repairs to an abutting sidewalk, and I see no reason why we should not abandon the the majority view and follow this eminently more sensible approach. See, *e. g., Nash v. Atlantic White Tower System, Inc.,* 404 *Pa.* 83, 170 *A* 2d 341 (1961); *Dutton v. Lansdowne,* 198 *Pa.* 563, 48 *A.* 494 (1901); *Mintzer v. Hogg,* 192 *Pa.* 137, 43 *A.* 465 (1899); *Duncan v. Philadelphia,* 173 *Pa.* 550, 34 *A.* 235 (1896); *Lohr v. Philipsburg,* 156 *Pa.* 246, 27 *A.* 133 (1893); *Starr v. Philadelphia Transportation Company,* 191 *Pa. Super.* 559, 159 *A.* 2d 10 (Super. Ct. 1960).

Since by its action today, the majority of this Court permits to stand the anachronistic rule which immunizes an owner of property abutting a sidewalk for his negligent failure to maintain the sidewalk, I must dissent.

Justice JACOBS joins in this dissent.

*For affirmance*—Chief Justice WEINTRAUB and Justices FRANCIS, HALL and SCHETTINO—4.

*For reversal*—Justices JACOBS and PROCTOR—2.