JULIA YANHKO AND ADAM YANHKO, SR., PLAINTIFFS-APPELLANTS, v. SHELDON FANE AND DORA H. FANE, INDIVIDUALLY AND T/A K & H AUTO STORES; K & H AUTO STORES, INC., A CORPORATION OF THE STATE OF NEW JERSEY; AND THE CITY OF EGG HARBOR, A MUNICIPAL CORPORATION OF NEW JERSEY, DEFENDANTS-RESPONDENTS.

Argued March 22, 1976—Decided July 7, 1976.

530

*Mr. Robert F. Dunlap* argued the cause for appellants (*Messrs. Lipman, Antonelli, Batt and Dunlap,* attorneys).

*Mr. Louis Niedelman* argued the cause for respondents Fane and K & H Auto Stores, Inc. (*Messrs. Cooper, Perskie, Neustadter and Katzman,* attorneys).

*Mr. Patrick T. McGahn, Jr.,* argued the cause for respondent City of Egg Harbor (*Messrs. McGahn and Friss,* attorneys; *Mr. Gerard C. Gross* on the brief).

The opinion of the Court was delivered by

CONFORD, P. J. A. D., Temporarily Assigned. We have undertaken to consider once more the rule of sidewalk negligence law, most recently affirmed by this court in *Murray v. Michalak,* 58 *N. J.* 220 (1971), affirming on the opinion below, 114 *N. J. Super.* 417 (App. Div. 1970); *Barkley v. Foster Estates, Inc.,* 61 *N. J.* 576 (1972), affirming by an equal division of the court the decision in 121 *N. J. Super.* 453 (App. Div. 1971); and *Muzio v. Krauzer,* 62 *N. J.* 243 (1973), affirming on the opinion below, 122 *N. J. Super.* 221 (App. Div. 1971); that:

"An abutting owner is not liable for injuries suffered by a pedestrian on a defective or dilapidated sidewalk even though it constitutes a nuisance, unless the proofs show that that owner or his predecessor in title participated in the creation or continuance of the nuisance". 114 *N. J. Super.* at 418, *quoting Lambe v. Reardon,* 69 *N. J. Super.* 57, 64–65 (App. Div. 1961), certif. den. 36 *N. J.* 138 (1961).

The female plaintiff fell on a sidewalk in the City of Egg Harbor while walking from her place of employment to a nearby bank — a journey she made daily in the course of her employment. The sidewalk was abutted by a vacant lot owned by defendants, used for parking by customers of their auto store. The store was separated from the lot by three other stores, and access to the lot for vehicles was not over the sidewalk in question but from another street. The sidewalk was in a bad state of repair. On the occasion in question plaintiff's left toe had entered a hole or crevice in the side-

walk and struck the forward edge of the portion ahead of it, causing her to fall and sustain the injuries complained of. The accident occurred July 5, 1968, and the action was instituted June 3, 1970.

Defendants had owned the lot for 20 years but did not construct the sidewalk or ever repair it, nor did anyone else repair it during their ownership. There is no indication of when the sidewalk was constructed or by whom or as to any repairs ever made to it by anyone.

A search of the records of Egg Harbor City fails to reveal that the city ever built or maintained the sidewalk in question. Since long prior to defendants' ownership the city has had an ordinance imposing on abutting owners an obligation to construct sidewalks and to maintain them in good repair.

Plaintiffs' theory of the case was that the condition of the sidewalk was the result of the combination of improper construction, wear and tear by the elements and the pedestrian traffic. The facts stated above were recited as representations of intended proofs in the plaintiffs' opening, at the conclusion of which the trial court granted a motion to dismiss the complaint for failure of plaintiffs to state a *prima facie* case in their opening.

The Appellate Division affirmed in an unreported opinion. We granted certification, 68 *N. J.* 137 (1975), to review yet another time the basic sidewalk liability law of this State.

██ It is well settled that an abutting owner is not liable for the condition of a sidewalk caused by the action of the elements or by wear and tear incident to public use, but only for the negligent construction or repair of the sidewalk by himself or by a specified predecessor in title or for direct use or obstruction of the sidewalk by the owner in such a manner as to render it unsafe for passersby. See *Moskowitz v. Herman,* 16 *N. J.* 223 (1954) ; *Orlik v. De Almeida,* 45 *N. J. Super.* 403 (App. Div. 1957) ; *Snidman v. Dorfman,* 7 *N. J. Super.* 207 (App. Div. 1950) ; *Krug v. Wanner,* 28 *N. J.*

174 (1958) ; *Rupp v. Burgess,* 70 *N. J. L.* 7 (Sup. Ct. 1903) ; *cf. Davis v. Pecorino,* 69 *N. J.* 1 (1975).

Plaintiffs do not dispute the purport of the law as just restated, or its fatal impact on their fact presentations here. Rather they urge: (1) that considerations of justice and convenience warrant redefining common-law liability in this area of the law to impose a duty on all abutting owners not "to maintain a sidewalk in a dangerous condition," invoking the forceful dissenting opinion of Justice Proctor to that effect in *Murray v. Michalak, supra* (58 *N. J.* at 220, 222) ; (2) that, short of overruling the existing rule, it be modified to permit a jury to determine whether, on the alleged circumstantial case here made out, *some* prior owner of the property did not construct or repair the sidewalk improperly, for which the present owners should be properly accountable; and (3) that since for decades there have been in effect ordinances of the city imposing on abutting property owners the obligation of constructing and maintaining sidewalks, civil tort liability of such owners should be declared for failure to comply with the ordinance.

None of these contentions persuades us. We address them in order.

A.

Plaintiffs erect their principal thesis on the assertion in Justice Proctor's dissenting opinion in *Murray v. Michalak, supra,* that "one who maintains a sidewalk in a dangerous condition should be liable for injuries suffered by an innocent pedestrian as a result of that condition." 58 *N. J.* at 222. However, it seems to us that an abutting owner who makes no use of the sidewalk other than pedestrian passage thereover in common with the public generally is not properly to be described as "maintaining" it. This is particularly so when he does not exercise any control or dominion over it, as by constructing or repairing the sidewalk or making any other special use of it. *Cf. Davis v.*

*Pecorino, supra.* Presumably, defendants' title goes to the middle of the abutting street, subject to the public easement of vehicular passage in the street and of pedestrian passage on the sidewalk, with neither of which defendants are entitled to interfere. *Saco v. Hall,* 1 *N. J.* 377, 382 (1949); *Starego v. Soboloski,* 21 *N. J. Super.* 389, 392-393 (1952), aff'd 11 *N. J.* 29 (1952). In legal contemplation, the easement of public passage renders the sidewalk an integral part of the public highway. *Id.* 21 *N. J. Super.* at p. 392; *Mount v. Recka,* 35 *N. J. Super.* 374, 381 (App. Div. 1955).

■ The judicial imposition of a tort duty of care and maintenance of a portion of the public domain upon a property owner for no better reason than that his property is proximate to it would seem to be an arbitrary determination. See Stevenson, "Law of Streets and Sidewalks in New Jersey", 3 *Rutgers L. Rev.* 19, 25 (1949); *Mount v. Recka, supra,* 35 *N. J. Super.* at 380. The unrestrictable right of passage on the highway belongs to the public. In principle, therefore, a remedy for injury to a pedestrian caused by improper maintenance thereof should be subsumed under the heading of public liability. It should be for the Legislature as representative of the public at large to declare or regulate such liability,[1] not for the courts to impose it on the abutting owner as a convenient subject of liability. Despite decades of adherence by our courts to the principles enunciated above, the Legislature has not seen fit to impose a *per se* tort duty on the abutting owner. No satisfactory reason has been advanced for this court to do so now.

The rationale of public use and control formulated above undoubtedly underlies the accordant view of the American

---

[1]The accident in this case occurred before the effective date of the Tort Claims Act, *N. J. S. A.* 59:1-1 *et seq.,* and we do not consider its effect here, either in relation to the asserted liability of defendants or that of the City of Egg Harbor, which was joined as a defendant and later dismissed on motion. The matter of the city's liability is not raised on this appeal.

Law Institute and the great majority of American jurisdictions against tort liability of the abutting owner who is otherwise without fault or contribution to the accident. *Restatement, Second, Torts,* Sec. 349, pp. 230–231 (1965); Annot., 88 *A. L. R.* 2d 331, 340–346 (1963); *Prosser, Law of Torts* (4th ed. 1971) 353.

### B.

Plaintiffs contend it should be a jury question as to whether a predecessor in title of defendants built or repaired the sidewalk since there is evidence that the city did not do so and that there has been in effect for many years a sidewalk ordinance imposing such an obligation on abutting owners.

However, plaintiffs face the initial difficulty that they must establish not merely that the sidewalk is now dilapidated, as that could have developed from pedestrian use and wear and tear, but also that it is due to negligent construction or repair. This, in turn, requires a showing "as to when the sidewalk was constructed and the proper standard of construction at that time." *Moskowitz v. Herman, supra* (16 *N. J.* at 225). Such proof is obviously not presented by plaintiffs.

As to permitting an inference that some predecessor in title must have last constructed or repaired the sidewalk, our cases are firmly to the contrary. As pointed out by Judge Clapp in *Orlik v. De Almeida, supra,* work or repair on sidewalks is frequently done by municipal authorities, public utilities, Works Progress Administration (prior to World War II) and others "whose acts are not properly imputable to the owner." 45 *N. J. Super.* at 408. Plaintiffs' present proffer of proof is not substantial evidence negating the thesis that the last work on this sidewalk may have been done either by the city or by some entity other than a current owner. In any event, as held in *Orlik* and many prior decisions, a plaintiff

.does not make out a *prima facie* case against the abutting owner by merely putting in proof of the present existence of a nuisance. 45 *N. J. Super.* at 408–409. Nor in the present matter is such a case made out by the negative proofs offered by plaintiffs. We reaffirm the procedural burden placed on the plaintiffs by our prior cases in this kind of situation and hold that they have not met it.

## C.

Finally, we reject the thesis that a municipal sidewalk ordinance creates a tort duty owing to passersby on the public passageway.[2] Our settled law is to the contrary.

Our cases have consistently refused to find that ordinances requiring landowners to repair or maintain abutting sidewalks create a duty running from the property owner to the injured plaintiff, unless a statute explicitly establishes civil liability. See, *e. g., Lambe v. Reardon,* 69 *N. J. Super.* 57, 68 (App. Div. 1961), certif. den., 36 *N. J.* 138 (1961) ; *Fielders v. North Jersey St. Ry. Co.,* 68 *N. J. L.* 343 (E. & A. 1902) ; *Zemetra v. Fenchel Realty Co., Inc.,* 134 *N. J. L.* 358 (Sup. Ct. 1946), aff'd 135 *N. J. L.* 205 (E. & A. 1947) ; *Coll v. Bernstein,* 14 *N. J. Super.* 71 (App Div. 1951) ; *cf.* 19 *McQuillin, Law of Municipal Corporations,* Sec. 54.42b, at p. 106 (3d ed. 1967) ; Annot., 88 *A. L. R.* 2d, *supra,* at 354–358.

While the narrow issue of civil liability based on a *sidewalk* ordinance has apparently never been addressed by this court, an analogous question was decided in *Brown v. Kelly,* 42 *N. J.* 362 (1964). In that case plaintiff was injured as a result of a fall on a snow-covered sidewalk abutting defendant's premises. Although a municipal ordinance re-

---

[2] A 1916 ordinance in effect when this accident occurred requires all sidewalks, curbs and gutters to be "graded, paved, constructed and repaired" by adjoining lot owners, failing which the common council may cause the work to be done and the cost thereof to become a lien on the property.

quired removal of snow within twelve hours of daylight after a storm, the defendant owner had made no effort to comply. Refusing to upset the well settled rule that snow removal ordinances create no civil liability, absent an express provision therefor, *Sewall v. Fox*, 98 *N. J. L.* 819 (E. & A. 1923), this court affirmed the trial court's dismissal of plaintiff's suit.

The basic rationale underlying the decisions just cited stems from the long-standing premise that the primary responsibility for providing and maintaining streets and sidewalks resides in the government. Since the original duty of construction and repair is attributable to the government, breach of the responsibility delegated to a private owner by ordinance is conceived as constituting a breach of duty to the municipality rather than to the public. Otherwise stated, such ordinances are thought to be enacted for the benefit of the government, so that an injured passerby cannot qualify as "a member of the class for whose benefit the provision was adopted." The view that such municipal ordinances do not create a private cause of action absent express provision therefor was fully explicated in *Fielders v. North Jersey St. Ry. Co., supra* (68 *N. J. L.* at 352).

We adhere to the law as previously enunciated on the point in question.

Judgment affirmed.

PASHMAN, J. (dissenting). Because of its periodic and persistent recurrence, the question posed by this case — whether an abutting commercial landowner is liable for a pedestrian's injuries from a defective or dilapidated sidewalk — may truly represent a legal albatross of this Court. In affirming dismissal of plaintiff's cause of action, the majority relies on precedents supporting the proposition that a landowner does not incur liability, even when the landowner is aware of the existing condition and its danger to those who use the sidewalk. While I appreciate the guidance which is afforded by precedents, I am unwilling to retain

the case law of yesterday to defeat the logic and needs of today. By our blind adherence to precedent we risk violation of the spirit and commonsense upon which our system of law is founded.

Plaintiff, an employee of an Egg Harbor pharmacy, was injured while she was returning to work from a nearby bank after conducting business there on behalf of the pharmacy. Her route took her past a vacant lot which served as a parking area for customers of defendant's store. Because vehicles enter this parking area through a rear entrance, it is unnecessary for them to cross the sidewalk to gain access to the lot. Hence, the sidewalk is dedicated solely to pedestrian use. Despite this limited use, at the time of the accident the sidewalk was in "an absolutely horrendous state of disrepair." Its concrete slabs were generally uneven, and there were numerous cracks and holes in each of the slabs. Although the cause of this condition is uncertain, it may be inferred that it resulted from a combination of pedestrian use, the natural wear and tear of the elements and improper construction. It may further be inferred that defendants were aware of the condition of the sidewalk even though they had neither constructed the sidewalk nor ever repaired it.

On July 5, 1968, as she was returning from the bank, plaintiff stepped into a hole in the sidewalk adjacent to defendants' vacant lot and fell, causing her to sustain serious personal injuries. Plaintiff, joined by her husband *per quod,* instituted this action against defendants individually, their corporation (K & H Auto Stores, Inc.) and the City of Egg Harbor.[1]

The case came to trial on June 25, 1973 before a judge and jury. Plaintiffs' attorney, in his opening statement, reviewed the facts stated above and then offered to prove that defendants had owned the sidewalk for more than 20 years.

---

[1] A motion for summary judgment by the municipality was granted by the trial court, and the complaint against it was dismissed.

Counsel also stated that he would be able to show that the sidewalk, the condition of which was the sole and exclusive cause of Mrs. Yanhko's injury, was in a state of disrepair, and that defendants were aware of this condition. Plaintiffs, however, could not allege, or declined to allege, that defendants had constructed or ever repaired the sidewalk. Although counsel for plaintiffs stated that he could inferentially demonstrate that the sidewalk had been constructed by a predecessor in title to the defendants, no proof was available as to which predecessor was actually responsible for its construction or its subsequent condition. At the conclusion of counsel's statement, the court granted defendants' motion for an involuntary dismissal because plaintiffs had failed to state a *prima facie* case under existing case law. The Appellate Division affirmed in an unreported *per curiam* opinion. This Court granted plaintiffs' petition for certification to consider the policy underlying existing law. 68 *N. J.* 137 (1975).

The majority today goes no further than to reaffirm the principle that an abutting owner is not liable for a pedestrian's injuries from a defective or deteriorated sidewalk absent proof that the owner or his predecessor in title constructed or repaired the sidewalk in a negligent fashion. This principle accurately reflects the current law in this State. *See Murray v. Michalak,* 58 *N. J.* 220 (1971); *Barkley v. Foster Estates, Inc.,* 61 *N. J.* 576 (1972) (equally divided panel) aff'g 121 *N. J. Super.* 453 (App. Div. 1971) and *Muzio v. Krauzer,* 62 *N. J.* 243 (1973) aff'g o. b. 122 *N. J. Super.* 221 (App. Div. 1971).

While the majority concludes that it will not alter this principle because "[n]o satisfactory reason has been advanced for this court to do so," *ante* at 534, I would readily do so for the reasons stated in this opinion and in the forceful dissenting opinions of Justice Proctor in *Murray v. Michalak, supra,* and Justice Jacobs in *Moskowitz v. Herman,* 16 *N. J.* 223 (1954). I fully agree with Justice Proc-

tor's assessment that "it is high time this Court reevaluated the law relating to sidewalk negligence cases."

In reaffirming the existing law, the majority argues that it would be an "arbitrary determination" to impose liability on a landowner merely because his property is proximate to the sidewalk. *Ante* at 534. The majority further asserts that the public easement which belongs to pedestrians leaves the landowner with almost no control or dominion over the sidewalk and consequently:

[I]t seems to us that an abutting owner who makes no use of the sidewalk other than [in] pedestrian passage thereover in common with the public generally is not properly to be described as "maintaining" it. [*Ante* at 533].

I find this position to be inaccurate and untenable. While the public does acquire an easement of passage over defendants' sidewalk, defendants' title still goes to the middle of the abutting street and defendants continue to retain considerable interest in and control over that portion of the sidewalk located on their land. *Saco v. Hall,* 1 *N. J.* 377, 382 (1949); *Starego v. Soboloski,* 21 *N. J. Super.* 389, 392–93 (App. Div.), aff'd 11 *N. J.* 29 (1952). *Accord* 2 *American Law of Property,* § 9.54 (1952); 10 *McQuillin, Municipal Corporations* (3 ed. 1966), § 30.32 at 687–88; *Haven Homes v. Raritan Tp.,* 19 *N. J.* 239, 244–45 (1955); *Stanley Development Co. v. Millburn Tp.,* 26 *N. J. Super.* 328, 330 (App. Div. 1953). For instance, in their exercise of the power of eminent domain, state and local authorities are permitted to take only so much of an owner's title as is essential to establish the public easement. *Lehigh Valley R. R. Co. v. Chapman,* 35 *N. J.* 177 (1961), *cert.* den. 368 *U. S.* 928, 82 *S. Ct.* 364, 7 *L. Ed.* 2d 192 (1961); *N. J. Turnpike Authority v. Washington Tp.,* 16 *N. J.* 38, 42–43 (1954); *Valentine v. Lamont,* 13 *N. J.* 569, 577 (1953), *cert.* den. 347 *U. S.* 966, 74 *S. Ct.* 776, 98 *L. Ed.* 1108 (1954). This requirement is intended to permit the landowner to retain as many rights and privileges as are consistent with the pub-

lic taking. Thus, there is an obvious distinction between landowners who retain substantial rights in the property and pedestrians who may simply use the public easement but exercise no effective control over it. One leading treatise describes the rights which an abutting landowner retains as follows:

[A]s the owner of land abutting upon a public way, he has certain rights against the public over and above his rights as a member of the public. These abutter's rights are in the nature of easements in the part of the highway adjoining his land appurtenant to his lot. [2 *American Law of Property, supra*, § 9.54 at 493].

Accordingly, the courts of this State have consistently sought to protect these rights from unnecessary encroachments by municipally-authorized public easements. *Union Towel Supply Co. v. Jersey City,* 99 *N. J. L.* 52 (Sup. Ct. 1924); *Faulks v. Allenhurst,* 115 *N. J. L.* 456 (E. & A. 1935); *Kirzenbaum v. Paulus,* 57 *N. J. Super.* 80, 86 (App. Div. 1959).[2]

-----

[2]Among the rights which have been traditionally accorded to abutting commercial landowners is that of an easement of view to permit pedestrians a clear and unobstructed view of the landowner's premises. Consequently, courts have enjoined public easements which have threatened this interest of the landowner. *See generally,* 2 *American Law of Property, supra,* § 9.54 at 493; Annotation, "Easement of view from public street," 90 *A. L. R.* 793 (1934). As Vice-Chancellor Pitney observed in an early New Jersey case upholding this interest:

An abutting owner necessarily enjoys certain advantages from the existence of an open street adjoining his property, which belong to him by reason of its location, and are not enjoyed by the general public, such as the right of free access to his premises, and the free admission and circulation of light and air to, and through his property. [*Dill v. Camden Bd. of Educ.,* 47 *N. J. Eq.* 421, 435 (Ch. 1890), quoting from *Lohr v. Metropolitan Ry. Co.,* 104 *N. Y.* 268, 291, 10 *N. E.* 528, 532 (Ct. App. 1887)].

*See also, State v. Londrigan,* 4 *N. J. Misc.* 574, 133 *A.* 702 (Sup. Ct. 1926); *Klaber v. Lakenan,* 64 *F.* 2d 86 (8 Cir. 1933); *Northio Theatres Corp. v. 226 Main St. Hotel Corp.,* 313 *Ky.* 329, 231 *S. W.* 2d 65 (Ct. App. 1950).

In light of these limitations upon the public easement, it is clear that the landowner is not the powerless figure portrayed by the majority. In any event, to speak of a landowner's power and control to restrict access to his property is somewhat anomalous within the context of the instant case. Here, the landowners, as practical businesspeople, are not trying to restrict access to either the sidewalk or their stores. In fact, to the extent that an accessible sidewalk will facilitate the success of their business, defendants strongly encourage use of the sidewalk. This situation is hardly distinguishable from that in which a storekeeper opens his premises to business invitees. Our courts have traditionally held that a business proprietor has a duty to exercise reasonable care to protect the safety of the invited public. *Handleman v. Cox*, 39 *N. J.* 95 (1963); *Brody v. Albert Lifson & Sons*, 17 *N. J.* 383 (1955); *Prosser, Torts* (4 ed. 1971), § 61 at 392–93.[3] Imposition of this duty has been justified on the basis of the economic benefits which accrue to the landowner from his patrons and also on the assurances of reasonable safety which the landowner impliedly extends to them when they enter his store. *Murphy v. Kelly*, 15 *N. J.* 608 (1954);

---

[3]In conjunction with this common law duty, I also take note of a 1916 ordinance in Egg Harbor which requires abutting landowners to maintain sidewalks, curbs and gutters. *Ante* at 536. This provision has been adopted in accordance with the statutory power conferred on municipalities by *N. J. S. A.* 40:180–2. The duty which this ordinance imposes on landowners is an obligation to assume a public responsibility. Stevenson, "Law of Streets and Sidewalks in New Jersey," 3 *Rutgers L. Rev.* 19 (1949). Because the obligation created by this provision is primarily concerned with the safety of pedestrians, it is fanciful to suggest that only a municipality may invoke its provisions. *Pirozzi v. Acme Holding Co. of Paterson*, 5 *N. J.* 178, 186 (1950). On this point, Justice Jacobs stated in his *Moskowitz v. Herman* dissent:

Much may be said for the position that, in the light of current urban conditions, landowners (*at least those engaged in commercial activity*) should now be held accountable, under this principle, for damages resulting from their failure to discharge their statutory duty of maintaining the sidewalks in front of their premises. (16 *N. J.* at 228); [emphasis supplied]

*Lewin v. Ohrbach's, Inc.*, 14 *N. J. Super.* 193 (App. Div. 1951); *Krackomberger v. Vornado, Inc.*, 119 *N. J. Super.* 380 (App. Div. 1972). While I acknowledge the decisions that have found this reasoning inapplicable to cases involving the negligent care of sidewalks by commercial landowners, *Skupienski v. Maly*, 27 *N. J.* 240 (1958); *Muzio v. Krauzer, supra; O'Neill v. Suburban Terrace Apartments, Inc.*, 110 *N. J. Super.* 541 (App. Div. 1970), certif. den. 57 *N. J.* 138 (1970); *MacGregor v. Tinker Realty Co.*, 37 *N. J. Super.* 112 (App. Div. 1955), I do note that judicial expression on this question is not uniform. In *Krug v. Wanner*, 28 *N. J.* 174 (1958), for example, Justice Jacobs speaking for a unanimous Court stated:

> For the protection of its patrons, every commercial establishment must maintain its premises, including means of ingress and egress, in reasonably safe condition . . . . And although the paved sidewalks fronting a commercial establishment are primarily for the use of the public generally, their condition is so beneficially related to the operation of the business that the unrestricted legal duty of maintaining them in good repair might, arguably, be placed on it. [28 *N. J.* at 179–180; citations omitted].

*See also Latzoni v. Garfield*, 22 *N. J.* 84 (1956); *Merkel v. Safeway Stores, Inc.*, 77 *N. J. Super.* 535 (Law Div. 1962). I also note that other jurisdictions have explicitly accorded invitee status to pedestrians to permit their recovery from commercial landowners. *Blaine v. United States*, 102 *F. Supp.* 161, 164–65 (E. D. Tenn. 1951); *Gilroy v. United States*, 112 *F. Supp.* 664, 666 (D. D. C. 1953); *Love v. Clam Box, Inc.*, 35 *Misc.* 2d 436, 232 *N. Y. S.* 2d 924, 925 (Sup. Ct. 1962); *Cooley v. Makse*, 46 *Ill. App.* 2d 25, 196 *N. E.* 2d 396, 398–99 (App. Ct. 1964).

However, even if I lacked the precedential support of these decisions, I would still feel compelled to reach what I regard as an inherently fairer result by permitting plaintiff to prove her case against the landowner. If it is conceded that plaintiff would have had a claim against defendant had she been actually injured within defendants' store, it makes

little sense to reach a contrary result where she sustains her injury elsewhere on the business property of the defendant-landowner. If the landowners were aware of the dangerous condition of the sidewalk, and failed to take the necessary action to correct it, plaintiffs' right to bring suit should not depend on the fortuitous misfortune of where the injury occurred on defendants' property.

For similar reasons, I reject the requirement that plaintiff demonstrate that the defective condition of the sidewalk was attributable to either defendants or some predecessor in title. Not only does this requirement impose an onerous burden on plaintiff[4], but it bears no real relationship to the claim that defendants were negligent for their failure to correct a defect of which they were aware. As Justice Proctor observed in *Murray v. Michalak, supra*:

> What possible difference should it make whether a predecessor in title was responsible for creating the conditions which led to that nuisance? It strikes me as anomalous that a property owner's duty to repair should hinge on so tenuous a criterion — a criterion which is wholly irrelevant to his own wrongdoing. [58 *N. J.* at 224].

If it could be established at trial that some other party were responsible for the negligent construction or repair of

---

[4]*See*, for example, Justice Proctor's remarks in *Murray v. Michalak,, supra*:

> In most cases it is difficult or impossible for an injured party to come up with the required proof that a predecessor in title planted the tree or constructed the sidewalk. And even if he could prove who constructed the sidewalk, he must still meet the heavy burden of proving that the construction violated the proper standard for the time the sidewalk was built. *Moskowitz v. Herman*, 16 *N. J.* 223, 224–225 (1954). Where the sidewalk is old, this burden may be near impossible to meet since a plaintiff must first prove the age of the sidewalk and then the proper standard of construction for that time. *Id.* But all this is aside from the point. In my view, one who maintains a sidewalk in a dangerous condition should be liable for injuries suffered by an innocent pedestrian as a result of that condition. It should make no difference who created the condition or whether it arose from natural causes. Rather, it is the maintenance of that condition which should give rise to an action in negligence. [58 *N. J.* at 222].

the sidewalk, then defendant might conceivably seek contribution or indemnity from that party or shift liability to that party altogether. However, the fact that defendant was not originally responsible for the defective condition of the sidewalk should not automatically and necessarily preclude recovery by the plaintiff. This result is especially illogical where, as here, there is no evidence that anyone other than defendants or their predecessors in title were responsible.

Thus, I would find it unnecessary for the plaintiff to establish that the defective condition was attributable to either defendant or a predecessor in title. This requirement must be discarded as a legal fiction which bears no relationship to the negligence charged in this case — i. e., negligent failure to properly maintain a sidewalk or correct an obvious defect.

For these reasons, I need not reach plaintiffs' alternate ground for reversal concerning the inference that *some* predecessor in title was ultimately responsible for the negligent construction or repair of the sidewalk.

My disagreement with the majority transcends its assessment of the rights and duties of commercial landowners, and extends to the undue reliance which the majority places on precedent. I, of course, recognize the important role which precedent plays in the ongoing development of the law. Precedents provide a useful summary of the past and a helpful directive for the future. Nonetheless, while past judicial decisions may afford guidance to courts, they are only a starting point for judicial inquiry. They are only a means and not an end of our decision-making process. As Justice Cardozo stated in his seminal work, *The Nature of the Judicial Process* (1921):

> The rules and principles of case law have never been treated as final truths, but as working hypotheses, continually retested in those great laboratories of the law, the courts of justice. Every new case is an experiment; and if the accepted rule which seems applicable yields a result which is felt to be unjust, the rule is reconsidered. It may not be modified at once, for the attempt to do absolute justice in every single case would make the development and mainte-

nance of general rules impossible; but if a rule continues to work injustice, it will eventually be reformulated. The principles themselves are continually retested; for if the rules derived from a principle do not work well, the principle itself must ultimately be re-examined. [*Id.* at 23].

This statement, in itself, constitutes neither a denial nor a rejection of precedent. As Justice Cardozo acknowledges, "in the main there shall be adherence to precedent." *Id.* at 112. The salutary operation of this general rule fosters symmetry in the law and consistency in its application. Nevertheless, the adherence to precedent is only warranted where the result it yields is consistent with standards of fairness. Thus, as Justice Cardozo observed:

Symmetrical development may be bought at too high a price. Uniformity ceases to be a good when it becomes uniformity of oppression. The social interest served by symmetry or certainty must then be balanced against the social interest served by equity and fairness or other elements of social welfare. [*Id.* at 112–13].

Within the instant case, I have difficulty discerning the Cardozoan element of fairness which would justify continued adherence to the rule of nonliability which the majority reaffirms today. I am convinced that continued adherence to this rule will produce results which are both undesirable and inconsistent with modern notions of fairness. For instance, the rule provides no incentive for a landowner to repair a deteriorating sidewalk. In fact, because a landowner may incur liability if he repairs a sidewalk in a negligent fashion, it is more advantageous for him to ignore the defective conditions altogether. The practical operation of this rule produces a result which hardly comports with current standards of justice.[5] As Justice Jacobs stated in *Moskowitz v. Herman, supra*:

---

[5]Justice Proctor made this point in his *Murray v. Michalak* dissent:

This rule has no place in today's society. It is manifestly unjust to permit a property owner to sit idly by and watch with impunity as his sidewalk deteriorates to a point where it becomes a trap for

> The foregoing doctrine is pregnant with seeds of gross injustice for it tends to immunize the wrongdoer whose flagrant neglect of duty has caused injury to an innocent party who is left with recourse against no one. [16 *N. J.* at 228].

The result reached by the majority is all the more unfortunate because it finds its seeds in doctrines of the past which have no place in our modern society. It is difficult to conceive of a comparable situation in the law of negligence which so effectively insulates a wrongdoer from the consequences of his actions. While courts should turn to the rules of the past for guidance, our acceptance of past legal principles should be conditioned upon their continued applicability. I am mindful of Chief Justice Vanderbilt's statement in *State v. Culver*, 23 *N. J.* 495 (1957), *cert.* den. 354 *U. S.* 925, 77 *S. Ct.* 1387, 1 *L. Ed.* 2d 1441 (1957):

> The nature of the common law requires that each time a rule of law is applied it be carefully scrutinized to make sure that the conditions and needs of the times have not so changed as to make further application of it the instrument of injustice. [23 *N. J.* at 505].

*Accord, Ft. Lee Sav. & Loan Ass'n v. LiButti,* 106 *N. J. Super.* 211, 219 (App. Div. 1969). In this regard, our continual reconsideration of the question presented by this case at least indicates that litigants perceive a readiness by this Court to change an antiquated rule. This perception has been manifested in the increasing challenges which have been recently presented on this issue. *Murray v. Michalak,*

---

unwary pedestrians and then to immunize him from liability when the all too foreseeable injuries occur. Moreover, the law as it now stands discourages one from repairing his sidewalk, for if he undertakes repairs, and does so improperly, he will be held liable even if to some extent the repairs ameliorate the condition. Why should he take this risk when he can remain immune by ignoring the danger completely? Who in the eyes of the law should be considered the greater wrongdoer, the person who conscientiously undertakes repairs and does so improperly, or the person who, knowing of a hazardous condition, chooses utterly to ignore it? [58 *N. J.* at 223].

114 *N. J. Super.* 417 (App. Div. 1970), aff'd o. b. 58 *N. J.* 220 (1971) ; *Muzio v. Krauzer*, 122 *N. J. Super.* 221 (App. Div. 1971), aff'd o. b. 62 *N. J.* 243 (1973) ; *Brown v. Lins Pharmacy, Inc.*, 67 *N. J.* 392 (1975) ; *Davis v. Pecorino,* 69 *N. J.* 1 (1975).

This pattern of litigation has been matched by the Court's own apparent willingness to entertain such actions. The decisions which these actions have produced confirm the belief of litigants that this Court is slowly moving towards a repudiation of the immunity which has traditionally cloaked commercial landowners. The unseemly judicial hand-wringing which has attended continued reassessment of this question has been reflected in the ambivalence which marks the cases in this State.

The three cases which the majority cites for the basic proposition of landowner nonliability are apt illustrations of this ambivalence. *Ante* at 531. *Murray v. Michalak, supra,* was decided in a 13-word, *per curiam* opinion in which the majority, perhaps wisely, deferred comment on this troublesome doctrine, and instead relied on the opinion of the Appellate Division. Furthermore, the Court's decision was by a divided panel, and evoked an extensive and strongly-worded dissent by Justice Proctor (joined by Justice Jacobs) which criticized the inherent unfairness of the decision. In *Barkley v. Foster Estates, Inc., supra,* the Court was unable to reach a concensus and the Appellate Division decision upholding nonliability was affirmed by an equally divided Supreme Court. Finally, in *Muzio v. Krauzer, supra,* this Court again declined to elucidate the basis for its decision and, instead, restricted itself to a three-line *per curiam* affirmance of the Appellate Division's own *per curiam* opinion. Accompanying the Appellate Division opinion in that case was a concurrence by Judge Lewis who clearly indicated that he was joining the other members of his panel because he felt bound by the prior decisions of this Court. Nonetheless, as he also stated:

The facts and circumstances of this storekeepers-patron sidewalk case augur well for a needed change in our public policy as indicated in the dissenting opinions in *Moskowitz v. Herman, supra,* 16 *N. J.* at 226–231 and *Murray v. Michalak, supra,* 58 *N. J.* at 220–226. [122 *N. J. Super.* at 224].

If these three cases represent the logic upon which we perpetuate the doctrine of nonliability, then the strength of our reasoning may be jeopardized by the weak precedential foundation upon which it is grounded.

In the final analysis, the majority continues to adhere to established legal doctrine in the face of overwhelming considerations of policy and fairness which suggest conforming the law to meet public expectations. The majority justifies this action by suggesting that plaintiffs' remedy is "subsumed under the heading of public liability." Hence:

It should be for the Legislature as representative of the public at large to declare or regulate such liability, not for the courts to impose it on the abutting owner as a convenient subject of liability. Despite decades of adherence by our courts to the principles enunciated above, the Legislature has not seen fit to impose a *per se* tort duty on the abutting owner. [*Ante* at 534]

This statement, at best, represents an implicit admission that the rule which the majority upholds in this case should be changed. At worst, it represents an abdication of judicial responsibility which Justice Holmes criticized so long ago:

I think that the judges themselves have failed adequately to recognize their duty of weighing considerations of social advantage. The duty is inevitable, and the result of the often proclaimed judicial aversion to deal with such considerations is simply to leave the very ground and foundation of judgments inarticulate, and often unconscious, as I have said. [Holmes, "The Path of the Law," 10 *Harv. L. Rev.* 457, 467 (1897)].

The majority, by its decision today, has again suppressed the unconscious judgment and compelling commonsense which recommend plaintiffs' position. In so doing, the majority has maintained the consistency of the law at the price of perpetuating its unfairness. I am unwilling to do

so and file this opinion in the hope that a voice of dissent may become a promise for the future. This may afford small solace to Mrs. Yanhko who must bear the physical and financial burdens which will follow her injuries. Consequently, the position of the plaintiffs and the equities which it represents must await expression on another day when another case will again present an opportunity to take this progressive step.

I would reverse the judgment of the Appellate Division.

Justice SCHREIBER has authorized me to state that he joins this dissent.

*For affirmance*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN and CLIFFORD and Judge CONFORD—5.

*For reversal*—Justice PASHMAN and SCHREIBER—2.