**Bessie HORN**

v.

**PEANUT WORLD CO., et al.**

Civ. A. No. 93–1452.

United States District Court,
E.D. Pennsylvania.

Nov. 24, 1993.

R. Thomas Price, Philadelphia, PA, for plaintiff.

Thomas J. Murphy, Jr., Rubinate & Marks, Philadelphia, PA, for defendants.

## MEMORANDUM

DALZELL, District Judge.

On the afternoon of July 2, 1991, plaintiff Bessie Horn was walking on the Boardwalk in Atlantic City, New Jersey, when she tripped over a raised nail protruding from the boardwalk in front of a store called Peanut World.[1] Thereafter, Horn filed this ac-

1. Peanut World, which describes itself as "Atlan-          tic City's largest souvenir store", sells, among

tion against Peanut World Company and Schiff Enterprises, Inc., alleging that the defendants negligently inspected, maintained and/or repaired the Boardwalk adjacent to their store.

Defendants have filed a motion for summary judgment contending that they are not liable for Horn's injuries because the maintenance of the Boardwalk is wholly the responsibility of the City of Atlantic City, not the defendants. In response, Horn argues that the Boardwalk is a "sidewalk" and points out that owners of stores abutting on sidewalks are legally responsible for the maintenance of those walkways.[2]

In order to ascertain who is responsible for maintaining the Atlantic City Boardwalk, we must therefore determine whether the Boardwalk qualifies as a common sidewalk. For the following reasons, we predict that the New Jersey Supreme Court would hold that the Boardwalk is not a sidewalk and thus the responsibility for maintaining the Boardwalk lies entirely with Atlantic City. We will therefore grant defendants' motion.

It is undisputed that on the morning of the accident Bessie Horn[3] took a Leisure Line casino bus from Philadelphia to the Claridge Casino at Indiana Avenue and the Boardwalk in Atlantic City. At lunchtime on that day, she walked up the Boardwalk, past Illinois Avenue, to the Resorts Casino and Hotel at the corner of North Carolina Avenue and the Boardwalk. After eating lunch there, Horn headed back to the Claridge. She advanced to Illinois Avenue, where Peanut World is located, and spent some time browsing in the store. When she finished her shopping, she exited Peanut World through a door which

opened directly onto the Boardwalk. By chance, there was a raised nail in the Boardwalk a few feet outside the door[4] on which Horn tripped, causing her to fall. Horn's doctor's fees and other medical expenses resulting from the soft tissue injuries the fall caused are said to amount to no more than five thousand dollars.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law, *id.* at 248, 106 S.Ct. at 2510, and all inferences must be drawn, and all doubts resolved, in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962); *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir.), *cert. denied*, 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985).

In New Jersey[5], business owners are responsible for providing their invitees with "a reasonably safe place to do that which is within the scope of the invitation". *MacGrath v. Levin Properties*, 256 N.J.Super. 247, 606 A.2d 1108, 1110, *cert. denied*, 130 N.J. 19, 611 A.2d 656 (1992) (quoting *Butler v. Acme Markets, Inc.*, 89 N.J. 270,

---

other items, salt water taffies and, presumably, peanuts.

**2.** Horn does not allege that defendants had a monopoly over the maintenance of that portion of the Boardwalk. She does, however, argue that the defendants were partially responsible for the maintenance.

**3.** Horn is a citizen of Pennsylvania, and given the defendants' New Jersey citizenship and the alleged amount in controversy, we have diversity jurisdiction.

**4.** The parties disagree as to how far Horn was from the door when she tripped. *See* Defendant's motion for summary judgment at 2. We

find, however, that this factual dispute is immaterial to our resolution of the legal issues. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

**5.** It is undisputed in this case that we must apply New Jersey law because Horn's accident occurred in Atlantic City and the defendants are New Jersey corporations. Amended Complaint at ¶¶ 2–3. Since the New Jersey Supreme Court has not opined on the central issue, however, our enterprise is necessarily a prediction.

275, 445 A.2d 1141 (1982)). While this duty requires proprietors to provide a safe means of "egress and ingress", *id.* (citing *Krug v. Wanner*, 28 N.J. 174, 179, 145 A.2d 612 (1958)), at common law store owners were not subject to liability to "pedestrians who [were] are injured on an abutting highway or sidewalk which [was] part of the public domain". *MacGrath*, 606 A.2d at 1110 (citing *Yanhko v. Fane*, 70 N.J. 528, 534–35, 362 A.2d 1 (1976)). One notable modern exception to the common law rule is that a business owner can be liable to an injured pedestrian if the owner negligently fails to maintain an abutting sidewalk in a reasonably good condition. *See Stewart v. 104 Wallace Street, Inc.*, 87 N.J. 146, 157, 432 A.2d 881 (1981). The purpose of this exception is to ensure that innocent parties have a remedy for their injuries and to provide commercial landowners with an incentive to maintain their sidewalks. *Chimiente v. Adam Corp.*, 221 N.J.Super. 580, 535 A.2d 528, 530 (1987).

■ The Code of the City of Atlantic City defines the term "sidewalk" as "[a]ny surface provided and intended for the exclusive use of pedestrians", City Code at 184–1, Exh. C to Plaintiff's reply to defendants' motion ("Plaintiff's reply"). The Atlantic City Code, like the New Jersey courts, requires owners of the "respective premises fronting on such sidewalks" to maintain them. City Code at 222–14, Exh. D to Plaintiff's reply. Standing alone, the Code's definition of "sidewalk" would appear to encompass the Boardwalk, which is undoubtedly a "surface provided and intended for the exclusive use of pedestrians".

A further provision of the Code, however, casts doubt on this simple linguistic classification. That provision states that "[n]o person shall place, install or maintain a newsrack on any sidewalk, boardwalk or ramp leading to the Boardwalk". City Code at 184–2, Exh. C to Plaintiff's reply. By separately referring to both "sidewalks" and "boardwalks" in that sentence, the Code suggests that it does not consider the two types of walkways to be alternate descriptions of the same thing. By capitalizing "Boardwalk", the Code also identifies something distinct from a sidewalk or walk made of boards.

The Boardwalk's unique history and purpose also materially distinguishes it from ordinary sidewalks. Atlantic City's City Council laid the foundation for the Boardwalk in 1899 when it adopted an ordinance by which the City purchased a large strip of land along the ocean front for the creation of a public park. Atlantic City Public Ordinance of October 13, 1899, Exhibit D to Defendants' brief. Eleven years later, the City Council clarified that the interior line of the public park was to be the inner line of the "elevated boardwalk now or hereafter constructed".[6] Atlantic City Public Ordinance number 27, Exh. E to Defendants' brief in support of their motion for summary judgment ("Defendants' brief"). Not only do these ordinances make clear that the Boardwalk, unlike a sidewalk, is a public park, but they also establish that the Boardwalk is City-owned, in contrast with sidewalks which private citizens own subject to public easements for pedestrian passage. *See Yanhko*, 362 A.2d at 4 (property owner's title goes to the middle of the abutting street).

Furthermore, Atlantic City treats the Boardwalk very differently than it treats sidewalks, demonstrating that the City itself considers the Boardwalk to be different in kind from sidewalks. Most importantly, even though *Stewart* makes land owners responsible for maintaining their adjacent sidewalks, Atlantic City voluntarily assumed the responsibility of maintaining the Boardwalk in the deed in which the City acquired ownership of the park property, and it retains that responsibility to this day. *Marlborough–Blenheim*, 98 N.J.Eq. at 131, 129 A. at 756.

■ The records of the Boardwalk Division of the Atlantic City Department of Pub-

---

**6.** The New Jersey courts have readily and regularly recognized the beach and Boardwalk's special status as a "public park" and "recreational facility". *See Marlborough–Blenheim v. Atlantic City*, 98 N.J.Eq. 129, 130–131, 129 A. 756 (1925)

(rehearsing this history as a "public park" that the "city agreed to maintain" in the deed acquiring the land); *Sharra v. Atlantic City*, 199 N.J.Super. 535, 489 A.2d 1252, 1254 (1985).

lic Works verify this fact. *See* Exhs. H, I, J, K, L to Defendants' brief. According to these records,[7] the Boardwalk Division inspects and cleans the Boardwalk on a daily basis and has its own staff of carpenters who repair and replace any loose decking boards and high nails on the promenade. *Id.* The Boardwalk Division also performs all snow removal on the Boardwalk.[8] *See* Exhs. H, I to Defendants' Brief. Moreover, when a member of the public detects a potentially dangerous condition on the Boardwalk, he or she can file an official written complaint with the City and the Boardwalk Division will respond to the complaint and perform all necessary repairs.[9] *See* complaint records, Exh. L to Defendants' brief.

The City also treats the Boardwalk differently from sidewalks in the way that it regulates the Boardwalk's use. While owners of land adjacent to sidewalks may use those sidewalks for "stoops ... and other domestic and trade conveniences", *Stewart*, 432 A.2d at 884, and may prevent others from obstructing the public's view of their premises from the sidewalk, *id.*, owners of land adjacent to the Boardwalk have no such privileges.

In fact, since the oceanside park was created, the City Council has strictly regulated the Boardwalk's use in many ways not applicable to common sidewalks. For example, the City Council announced in 1910 that "[n]o persons shall upon such lands engage in, conduct or carry on any business, trade or occupation whatsoever except such as may be permitted by this ordinance". Under this regulation, abutting store owners will receive a summons if they place any of their possessions (*e.g.* tables, store merchandise, signs) on the Boardwalk.[10] This regulation is so strict that on rainy days store owners may not even place rubber mats on the Boardwalk to prevent their customers from slipping and injuring themselves. Felcher dep. at 30, Exh. P to Defendants' response. The regulation also requires store owners to apply for a vehicle permit each time they want to use a vehicle on the Boardwalk. Salvatore dep. at 27–29, Exh. M to Defendants' brief.

Yet another Boardwalk regulation that has no sidewalk counterpart is the requirement that no one "appear, walk or promenade on the Boardwalk clad only in a bathing costume or costume of similar character". Atlantic City Public Ordinance number 22–1961, § 3, Exh. F to Defendants' brief. The City Council passed this regulations in 1961 in order to promote the health, safety, and welfare of the public, to preserve the "tone" and "proper use" of the area as a "recreational facility", and to prevent nuisances and promote "good morals". *Id.* No such "moral" regulations govern Atlantic City sidewalks.

Because the Boardwalk, unlike a sidewalk, is a City-owned public park which Atlantic City tightly controls and strictly regulates, we do not believe that it qualifies as a common sidewalk. The maintenance duties for the Boardwalk are exclusively in the hands of the City. Not only does the City appear conscientiously to maintain the Boardwalk, but given that the abutting store owners are not permitted to place any objects on the Boardwalk, or drive any vehicles there without a permit, it would be difficult, if not impossible, for those owners to perform repairs in the area. As stated above, in order to maintain the Boardwalk, the City must not only replace nails that protrude from the boards' surface, but it must also replace rotted and dangerous boards, and from time to time perform work on the underlying structures. Store owners could not make such

7. Boardwalk Division employees enter notations regarding Boardwalk conditions and repairs into one of four columns in the inspection records. Each column represents a different section of the Atlantic City Boardwalk. Peanut World is located in the area identified as "Mississippi to Virginia".

8. In contrast with commercial landowners, who are responsible for snow removal on the sidewalks abutting their land. *Mirza v. Filmore Corp.*, 92 N.J. 390, 395, 456 A.2d 518, 521 (1983).

9. Contrary to popular belief at least since the time of Charles B. Darrow, the owners of the houses, hotels and stores adjacent to the Boardwalk are apparently not assessed for these repairs.

10. Deposition of John Salvatore at 26–27, Exh. M to Defendants' brief; Deposition of Police Officer Louis Danieli at 19, Exh. N to Defendants' brief; Deposition of Wayne Felcher at 23, 29, Exh P to Defendants' response to plaintiff's reply (Defendants' response").

repairs without the use of vehicles and other equipment, which are prohibited. In sum, Atlantic City has assumed plenary control of all repairs.

We do not believe that our conclusion here disturbs the policy considerations supporting the general *Stewart* rule requiring land owners to maintain their adjacent sidewalks. Our holding does not leave injured parties without a remedy because such people can institute actions against Atlantic City and recover from the City's community fisc. N.J.Stat.Ann. § 59:4–2 (1992). Moreover, it is futile to give adjacent landowners the incentive to maintain the Boardwalk adjacent to their properties when the City regulations effectively preclude them from making any repairs. Finally, we see no need to encourage abutting landowners to maintain the Boardwalk when Atlantic City has in the deed acquiring the property taken upon itself full responsibility for the maintenance of what is a priceless civic asset over which Atlantic City believes a public monopoly best serves its citizens.

In conclusion, because Atlantic City owns, regulates and independently maintains the Boardwalk as a public park, we do not believe that the New Jersey Supreme Court would hold adjacent store owners such as Peanut World liable for injuries arising from the failure to maintain that unique beachside walkway. We will therefore grant defendants' summary judgment.